Pittsburg-Columbia Oil, etc., Co. v. Broyles—46 Ind. App. 3.

track in front of said car? A. No. Q. Could decedent, by the exercise of ordinary care, under all the circumstances, have known of the proximity and movements of said car in time to avoid the collision therewith and the injury complained of in the complaint? A. Yes. Q. Would a reasonably careful and prudent man, in the position of decedent, have seen and observed the movements and proximity of said car, and have avoided collision therewith and the injury complained of in plaintiff's complaint? A. Yes."

The answers to the interrogatories are not in conflict with the general verdict, but, on the contrary, are in aid of and support .it. The reading of the instructions show that the jury were correctly instructed as to the law upon the issues joined.

No error having intervened in the court's overruling the motion for a new trial, the judgment is affirmed.

---

## PITTSBURG–COLUMBIA OIL AND GAS COMPANY v. BROYLES.

[No. 6,793.   Filed May 10, 1910.]

1. CONTRACTS.—*Gas and Oil.—Royalties.—Complaint.—Specificness.* —A complaint alleging that defendant drilled wells upon plaintiff's land, that on December 1, 1902, it had "completed six wells which produced gas, and ever since have so continued, and from which gas has been and is being transported and used off the premises and marketed," shows that such gas was transported off the premises; and if defendant desired greater accuracy as to the time during which gas was transported, a motion to make more specific was the remedy.   p. 5.

2. CONTRACTS.—*Peculiarities.—Gas and Oil.—Intention.—*Gas and oil contracts belong to a class of their own, the landowner's consideration usually being the prospective rents, or royalties, and the operator's being the exclusion of others from the territory being developed.   p. 6.

3. CONTRACTS.—*Gas and Oil.—Fraudulent Refusal to Transport.— Complaint.—Defenses.—*A complaint alleging that defendant fraudulently closed the gas wells on plaintiff's farm for the sole purpose of cheating and defrauding the plaintiff out of his royalties, the contract providing for certain royalties in case gas was trans-

ported off the premises and sold, is sufficient, a failure of market, or an unprofitable market, constituting defenses.   p. 7.

4.  CONTRACTS.—*Gas and Oil.—Transporting.—Complaint.*—A complaint alleging that the plaintiff has been the owner of the premises since August 31, 1901, that four wells were drilled upon such land and connected with pipe-lines "through which gas was then and ever since has been transported from said wells and premises," that on February 28, 1904, there became due a semiannual rental and that such rentals continually fell due until August 31. 1905, when the last one matured, shows that the plaintiff was the owner when the gas was transported, and that gas was transported from the wells for two years.   p. 8.

5.  PLEADING.—*Motion in Arrest of Judgment.*—Where the complaint is sufficient, a motion in arrest of judgment should be overruled.   p. 9.

6.  TRIAL.—*Special Findings.—Conclusions of Law.—Presumptions.*—Where error is alleged in the conclusions of law, the presumption is that the special findings are correct.   p. 10.

7.  CONTRACTS.— *Gas and Oil.— Complaint.— Paragraphs.— Judgment.—Special Findings.*—Where a complaint on a gas and oil contract consisted of three paragraphs, and the special findings show that the judgment rested on the first and third paragraphs, rulings, or the failure of proof, as to the second, are harmless. p. 10.

8.  CONTRACTS.—*Oil and Gas.—Royalties.*—A gas and oil contract giving to the owner one-sixth of the oil, and a certain sum for each gas well the product of which is marketed, is not fulfilled by the giving of the oil, where gas also is produced and marketed. p. 11

From  Blackford  Circuit  Court;  *Charles  E.  Sturgis,* Judge.

Action by William H. Broyles against the Pittsburg-Columbia Oil and Gas Company.  From a judgment for plaintiff, defendant appeals.  *Affirmed.*

*L. B. Simmons,* for appellant.

*Orr & Orr* and *Pierce & Bonham,* for appellee.

MYERS, C. J.—Appellee brought this action against appellant to recover a certain sum of money alleged to be due on account of certain gas wells drilled on his land.

The complaint was in three paragraphs, and a demurrer to each paragraph was overruled.  Answer, in denial.  Trial

by the court. A special finding of facts was made and conclusions of law stated thereon, followed by a judgment in favor of appellee for $1,000. It is first insisted that neither paragraph of the complaint stated facts sufficient to withstand a demurrer.

The objection to the first paragraph is, that it does not allege that gas was transported off the premises for any part of the period for which rental is claimed in said

1. paragraph. The first and second paragraphs of the complaint are based upon that part of a contract between appellant and appellee, of date June 16, 1900, which reads as follows:

"Should gas be found in any well on said premises, second party [appellant] agrees to pay first party $100 yearly, payable on demand, for each and every well from which gas is transported or used off said premises, so long as the gas is so transported."

In the first paragraph it is shown that appellant, or its assignors, entered upon appellee's land and drilled wells, laid pipe-lines in and over his premises, and on December 1, 1902, "had completed six wells which produced gas, and ever since have so continued, and from which gas has been and is being transported and used off the premises and marketed."

The yearly payment of $100 for each well we may designate as royalty, and it does not appear that any claim therefor was made for any well prior to the year 1902. It is argued by appellant that the allegation found in the complaint and herein quoted is not the direct statement of a fact, but is the conclusion of the pleader. We cannot so regard it. If appellant was in doubt as to the length of time or the number of years for which appellee was claiming a yearly royalty, his remedy was by a motion to make the complaint more specific. The first paragraph was not subject to appellant's criticism.

The second paragraph alleged "that plaintiff executed

said instrument without money or other consideration, save and except that named therein, and relied upon the royalty for gas and oil and the gas well rentals therein provided and stipulated to be paid. And he avers that defendant was bound and obligated to transport and use, and to cause to be transported and used, the gas in said wells, and each of them, and so has been at all times since December 1, 1902, but plaintiff avers that defendant on or about said date, wrongfully, fraudulently and with the fraudulent and wrongful intent to evade and avoid payment of said well rentals, ceased to take and transport the gas from said wells and shut them down in such manner as to prevent the outflow of gas therefrom, and disconnected them from the pipe-lines, and has ever since failed and refused to take and transport gas therefrom, thereby intending to evade liability to plaintiff for gas transported, and to cheat and defraud plaintiff out of said well rentals, and defendant has failed and refused and refuses to pay plaintiff the well rentals which have accrued from December 1, 1902, and the same are due and unpaid, as if the gas had been transported, and delay in payment has been unreasonable.''

It is first insisted that the demurrer to this paragraph should have been sustained, for the reason ''that appellant was under no legal obligation to find a market for and market the gas from said wells off the premises.''

It appears from the paragraph in question that the company was to pay yearly $100 for each well from which gas ''is transported or used off said premises,'' and for

2. the time so transported. Gas and oil contracts belong to ''a class of their own.'' *Ohio Oil Co.* v. *Delamore* (1905), 165 Ind. 243. The real consideration and inducement moving the contracting parties to such contracts has been held to be, on the part of the landowner, prospective rents and royalties, and on the part of the gas company ''the right to exclude others from the premises, and the anticipated profits in vending the products of the

wells it should drill.'' *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320; *Puritan Oil Co.* v. *Myers* (1907), 39 Ind. App. 695; *Dill* v. *Fraze* (1907), 169 Ind. 53.

From appellee's statement of facts it appears that gas was found in the six wells drilled by appellant or its assignors on appellee's certain tract of land, and that appellant, for the sole purpose of cheating and defrauding appellee out of the royalty justly due to him, refused to transport the gas, and closed the wells in such manner as to prevent the flow of gas therefrom. True, there is no showing that appellant had a market for the gas thus developed, yet it appears sufficiently that the only reason for closing down the wells was to evade the payment of royalties. This was an affirmative fact tendered by appellee and essential to a recovery under this paragraph. The contention of appellant, that it had no market for the gas, was a defense it had a right to make. It was agreed that the stipulated ''rentals'' should be paid while the gas was transported or used off the premises. If the gas was used on the premises, there was no provision made for the payment of any royalty or ''rentals.'' It could not be seriously contended that appellant was compelled, under said contract, to transport the gas and use it off of the premises, unless it could do so at a profit. Under the contract held by appellant, appellee had granted unto it ''all the oil and gas in and under'' the real estate where said wells were drilled. It was shown that the wells were then, and ever since their completion had been, producing great quantities of gas, which appellant refused to transport off the premises, for the sole purpose wrongfully of evading the payment of royalty. While the letter of the instrument sued on required appellant to pay royalty only for the time gas was transported or used off the premises, yet its wording must be construed in the light of the circumstances of the parties at the time the agreement was entered into, and the scope and purpose to be attained thereby. It will not

8     APPELLATE COURT OF INDIANA,

Pittsburg-Columbia Oil, etc., Co. *v.* Broyles—46 Ind. App. 3.

do to say that one of the parties might arbitrarily render the contract ineffective by refusing to do that which the plain spirit, if not the letter, of the contract required of him. Courts will look "critically into such instruments for the real intention of the parties, because it so frequently happens that they cannot, on account of incongruous provisions, be enforced according to the strict letter of the contract." *Ohio Oil Co.* v. *Detamore, supra.*

The third paragraph was founded upon a gas and oil contract held by appellant, whereby it was granted all the oil and gas in and under a certain described tract of real estate, with the exclusive right to enter thereon for the purpose of operating and drilling for oil and gas, building and laying pipe-lines for the transportation of oil and gas, which contract was to continue for ten years, "and as much longer as oil or gas is found in paying quantities." That part of the contract relied on by appellee reads as follows: "(1) Second party agrees to pay first party a yearly rental, payable semiannually, of $300 for said premises so long as gas is transported therefrom." In this paragraph it is alleged that appellee, since August 31, 1901, the date of the contract, has been and is now the owner of the land described in the contract; that prior to February, 1904, by virtue of said contract, four wells were drilled and connected by pipe-lines on said land "with main transportation pipe-lines through which gas was then and ever since has been transported from said wells and premises." It is then alleged that on February 28, 1904, there became due to appellee on account of said contract the sum of $150, and that $150 became due each six months thereafter, the last instalment on August 31, 1905; that appellant has failed, neglected and refused to pay said several sums. It is insisted that this paragraph does not allege that gas was transported off the premises during the period of two years for which semiannual payments are demanded. This objection cannot be sustained.

NOVEMBER TERM, 1909. 9

Pittsburg-Columbia Oil, etc., Co. v. Broyles—46 Ind. App. 3.

Appellant further insists that there is not a sufficient showing that appellee was the owner or entitled to the possession of the land described in the contract during the two years for which he is demanding the payments stipulated for in the contract. This objection is without merit.

5. Appellant's motion in arrest of judgment, because of an insufficient complaint, was overruled. No error intervened by this ruling. *City of La Fayette* v. *West* (1909), 43 Ind. App. 325.

It is assigned that the court erred in its conclusions of law. From the facts found, it appears that appellee was on June 16, 1900, and ever since that time has been, the owner of the real estate described in each of the two contracts to which we have referred. After the execution of the contract of August 31, 1901, of which appellant became the owner on October 14, 1903, four producing gas wells were completed on the real estate described in that contract, and continuously from October 14, 1903, to December 31, 1904, appellant transported gas from said wells off said premises. In the month of December, 1904, appellant wholly abandoned each of said wells and removed therefrom all the drivepipe, casing and tubing therein, and on March 18, 1905, released said contract of record, in the recorder's office of Delaware county; that appellant paid all "rental" as provided in said contract, except that due from July 1, 1904, to January 1, 1905, which was unpaid and with interest amounted to $172. After the execution of the gas and oil contract, of June 16, 1900, of which, by virtue of various assignments on October 14, 1903, appellant became the owner, six wells were completed on the land covered by that contract, all of which, except well No. 4, produced both oil and gas. Well No. 4 produced neither oil nor gas. Appellant at the time it became the owner of this contract owned pipe-lines and was engaged in piping and furnishing gas to consumers in Delaware and Madison counties, Indiana. It thereupon connected the wells drilled

on the land under this contract with said pipe-lines which ran across appellee's land, through which gas flowed from said wells until they were disconnected from said lines; that is to say, well No. 1 from October 14, 1903, to February, 1904, well No. 2 from October 14, 1903, to April 21, 1905, well No. 3 from October 14, 1903, to December —, 1904, wells No. 5 and No. 6, from October 14, 1903, to May 9, 1906. Said wells No. 2, No. 3, No. 5 and No. 6, from October 14, 1903, produced both oil and gas, and were operated continuously for both products until, as before stated, they were disconnected from appellant's gas mains. During all the time said wells were so operated appellee received his share of the oil from each of said wells, but from the time appellant became the owner of said last-mentioned contract no payment for royalty or "rental" for the use of gas from said wells or either of them was ever made to appellee or to any other person for him, although the same was demanded by appellee before the commencement of this action, and $828 is found to be due.

Upon the findings, of which we have given the substance, the court concluded the law to be with appellee, and that he was entitled to judgment against the appellant for $1,000.

Considering appellant's attack on the conclusions of law, we may assume that the facts were fully and correctly found. *Ray* v. *Baker* (1905), 165 Ind. 74. And while the special findings do not warrant a conclusion of law or a judgment against appellant, on the second paragraph it is clear that the judgment rests on the other two paragraphs, and as the findings recite all the facts necessary to be established by appellee to sustain all of the essential allegations of the first and third paragraphs of his complaint, and as we have held each of these paragraphs sufficient to withstand a demurrer for want of facts, the court did not err in its conclusions of law.

Appellant also contends that inasmuch as the special find-

ings show that each of the wells put down under one of the contracts produced oil as well as gas, and that the

8. royalty for the oil has been fully paid, there could be no charge against appellant for the gas, although it may have been transported off of appellee's land. Among the conditions upon which appellant held its right to operate the wells on appellee's land, was that it should deliver to appellee one-sixth "of all the oil produced and saved from the premises," as well as $100 yearly for each and every well from which gas was transported or used off of the land described in the contract. There is no provision in the contract whereby the operator might pay for one of the products thus produced, and thereby be relieved from the payment of the royalty required by the contract to be paid for the other product. There is no ambiguity in the contract on this subject. Therefore, under the facts in this case, the payment by appellant of the oil royalty did not relieve it from its obligation to pay the gas royalty.

Judgment affirmed.