## MAGNOLIA PETROLEUM CO. v. STROUD.
### (No. 575.)

Court of Civil Appeals of Texas. Waco. Nov. 17, 1927.

Rehearing Denied Jan. 5, 1928.

1. **Mines and minerals** ⬅79(3)—Gas lease held to entitle lessor to one-eighth of proceeds of sale of gas produced.

Gas lease, providing for royalty "at the rate of one-eighth of proceeds of sale for each well producing gas exclusively, and from which gas is then being used off the land or sold by" lessee, held to entitle lessor to one-eighth of the proceeds of the sale thereof.

2. **Mines and minerals** ⬅79(5)—Gas lease as modified held to require lessor to pay specified sum for gas used by him in excess of one-eighth of gas produced by well.

Where gas lease reserved royalty of one-eighth of proceeds of sale of gas produced, and lessee in response to lessor's offer replied that it was not in position to let lessor take more than his one-eighth of the gas from the well as it needed the gas for other purposes, but that whatever excess lessor should take it would furnish at a specified price, and lessor accepted proposition, gas lease as so modified held to require lessor to pay specified price for gas used by him in excess of one-eighth of gas produced

rather than for gas used by him in excess of one-eighth of capacity of well.

**3. Mines and minerals ⬤⟹73—Offer to modify gas lease by permitting lessor to take gas was accepted, where lessor connected gas line to well and began taking gas.**

Offer to modify gas lease so as to permit lessor to take his royalty in gas with any additional gas taken to be paid for at specified rate was accepted by lessor, where he connected his gas line to well and began taking gas therefrom.

**4. Mines and minerals ⬤⟹92—Constitution, statute, and rule of commission adopted thereunder respecting conservation of natural gas declare law and public policy (Const. art. 16, § 59a; Rev. St. 1925, art. 6014).**

Const. art. 16, § 59a, requiring conservation and development of natural resources, Rev. St. 1925, art. 6014, relating to production, conservation, and use of natural gas, and rule 25 of railroad commission adopted thereunder, providing that when gas from well is being used production shall be restrained to 50 per cent. of potential capacity, declare law of state and its public policy.

**5. Mines and minerals ⬤⟹73—Construction of gas lease violating law and public policy should not be indulged (Const. art. 16, § 59a; Rev. St. 1925, art. 6014).**

Construction of gas lease which would violate law under Const. art. 16, § 59a, and Rev. St. 1925, art. 6014, relating to conservation of natural gas, and public policy of state, ought not to be indulged.

**6. Mines and minerals ⬤⟹73—Gas lease should not be construed so as to make performance impossible if practical and reasonable construction can be made (Const. art. 16, § 59a; Rev. St. 1925, art. 6014).**

Gas lease should not be construed so as to make its performance impossible under Const. art. 16, § 59a (Rev. St. 1925, art. 6014), and rule of railroad commission if a practical and reasonable construction can be made.

**7. Appeal and error ⬤⟹1175(5)—Where judgment erroneously denied recovery on gas lease and case was fully developed, Court of Civil Appeals might render judgment.**

Where judgment of trial court erroneously denied recovery on gas lease, and it appeared that case was fully developed, Court of Civil Appeals might itself render judgment.

Appeal from District Court, Limestone County; L. M. Seay, Special Judge.

Suit by the Magnolia Petroleum Company against J. R. Stroud. From a judgment in favor of defendant, plaintiff appeals. Reversed and rendered.

W. H. Francis, A. S. Hardwicke, and Wallace Hawkins, all of Dallas, and C. S. & J. E. Bradley, of Groesbeck, for appellant.

Ira Lawley and A. M. Blackmon, both of Groesbeck, for appellee.

STANFORD, J. This suit was filed by appellant against appellee to recover $1,848.12, being the alleged contract price of 15,401 M cubic feet of natural gas sold and delivered

by appellant to appellee continuously over a period of 14 months from November, 1925, to January 1, 1927. The case was tried before the court without a jury, and judgment rendered for appellee. The trial court filed no findings of fact or conclusions, but there is a statement of facts in the record. Appellant duly perfected its appeal, and presents the record here for review.

Under its first proposition, appellant contends, in effect, that the court erred in refusing to render judgment for appellant for $1,848.12, the amount sued for, because the uncontradicted evidence required such judgment to be rendered. The record discloses that on May 23, 1921, appellee leased to appellant certain land, by the terms of which appellee conveyed to appellant "all the oil, gas and other minerals, in or under the tract of land hereinafter described," etc., describing about 1,257 acres, and containing the usual covenants for beginning wells, payment of rentals, etc. The royalties reserved by the grantor and required to be paid by the grantee were:

"(a) On oil, a quantity equal to one-eighth of all the oil produced and saved from said premises, after deducting that used for light, heat and operations on the premises, the same to be delivered at the wells or to the credit of grantor in the pipe lines with which the wells may be connected; (b) on natural gas at the rate of one-eighth of the proceeds of the sale for each well producing gas exclusively, and from which gas is then being used off the land, or sold by grantee; the grantor to have the privilege at grantor's risk and expense of making and maintaining connection and using gas from such well free of charge for one dwelling on the land."

This lease, which contained many other provisions not necessary to mention, was put in evidence. Appellant drilled two wells on said land, which produced gas only, and paid appellee one-eighth of the proceeds of the sale of gas from said two wells as gas royalty, up until about November, 1925. On August 15, 1925, appellee wrote appellant the following letter:

"Magnolia Petroleum Co., Dallas, Texas— Gentlemen: In reference to phone conversation with Mr. Falkner about your gas well on our Hudgins lease will say that as we have made no progress towards a deal with your Mr. Wilson for the well, will suggest that I connect the well to my line and take one-eighth of gas due me as rental on well, or take all the gas I can use from well on basis you suggested 6 cents per thousand 2 lb. pressure pending any deal we may make—if agreeable to your company.

"Shall we connect line or do you want to send your men to do same?

"Yours truly, J. R. Stroud."

Thereafter, on October 30, 1925, appellant received the following letter from appellee:

"Magnolia Petroleum Co., Dallas, Texas— Gentlemen: I am in receipt of yours of Oct. 26th, in which you inclose me check for $25.91 for the two months of August and September,

gas royalty. Referring to same will say that this is not satisfactory to me. I do not think your company has protected my interest in the production of gas; as I think offset wells have produced much more than your well has produced. I asked your company for one-eighth of this production. You declined to let me have it. I now ask you for it again and will pay you 12 cents per 'M' for what I use above one-eighth of the capacity of the well. Please let me know if you are willing to do this or if your company will give me this for one-eighth the capacity of the well; or if your company has any proposition to offer please submit it by return mail.

"Yours truly,        J. R. Stroud."

On November 2, 1925, appellant wrote the following letter to appellee:

"Mr. J. R. Stroud, Stroud Gas Company, Groesbeck, Texas—Dear Sir: In reply to your letter of recent date in which you request to be permitted to take one-eighth of the gas from our well on your premises:

"I wish to advise you that until you are further advised this will be satisfactory, but you will be obliged to lay your line to the well, also to make the connection. We are not in a position to let you take more than your one-eighth of the gas from this well as we need it for other purposes, but as it will be a very difficult matter to prorate this gas so that you will get exactly your one-eighth, whatever amount over and above that that you happen to take, we will furnish, subject to change on 60 days' written notice, at 12 cents per thousand cubic feet, computed on a basis of 2 pounds above atmospheric pressure.

"When you get ready to make your connection to this well, please advise Mr. Wilson and he will have a representative present."

[1] After receiving the above letter from appellant, dated November 2, 1925, appellee connected his gas line with appellant's two gas wells and began and continued to take gas therefrom until January 1, 1927, measuring the same through standard meters installed by himself. There is no contention on this appeal but that appellee took 15,401 M cubic feet of gas in excess of and above the one-eighth of the gas taken from said two wells during said period from November, 1925, to January 1, 1927. Appellee offered no evidence. On this appeal appellee contends the evidence was insufficient to show a contract of sale of gas from appellant to appellee, as alleged, but if such contract is shown, same was, in effect, that appellee would pay 12 cents per thousand cubic feet for the excess over one-eighth of the open capacity production of said two wells, and not the excess over the actual production, and that the amount he received, was not equal to one-eighth of the capacity of said wells. It will be observed that in the lease contract appellee conveyed to appellant "all the oil, gas and other minerals in or under said land," etc. The royalties reserved were: "(a) On oil one-eighth, etc.; (b) on natural gas at the rate of one-eighth of the proceeds of the sale for each well producing gas exclusively, and from

which gas is then being used off the land or sold by grantee."

[2] In other words, by the terms of the lease the title to all the gas was conveyed to appellant by appellee, and appellant was obligated to pay appellee one-eighth not of the gas produced, but of the proceeds of the sale of the gas produced. Again, it will be observed that under the lease appellant was obligated to pay appellee one-eighth of the proceeds of the sale of the gas produced, not one-eighth of the proceeds of the capacity of the well. It is clear that under the lease the title to all the gas vested in appellant, and appellant was obligated to pay appellee one-eighth of the proceeds of the sale of the gas produced. This is the construction of the lease contract adopted and acted upon by both appellant and appellee for some time, appellant paying and appellee receiving payment without complaint of one-eighth of the proceeds of the sale of the gas produced. But appellee, being in a position to use the gas in his business of furnishing gas to the citizens of Groesbeck, on August 15, 1925, wrote appellant. This letter indicates he had been conferring with some of appellant's agents with a view of getting one-eighth of the gas in lieu of one-eighth of the proceeds of the gas produced, and in said letter said:

"Will suggest that I connect the well to my line and take one-eighth of gas due me as rental on well or take all the gas I can use from well on basis you suggested 6 cents per thousand 2 lb. pressure pending any deal we may make, if agreeable to your company."

We think it is clear from this letter that the only change he wanted was his one-eighth in gas instead of in money. If he had connected his line and taken one-eighth of the gas as his rental in lieu of one-eighth of the proceeds of the sale of gas, he would have been getting only one-eighth of the gas produced. Appellant did not reply to above letter, and on October 30, 1925, appellee wrote appellant again, acknowledging receipt of check for $25.91 for the months of August and September gas royalty, and in this letter complains that appellant has not protected his interest in the production of gas, etc.; that offset wells have produced more than appellant had produced, and said letter continued:

"I asked your company for one-eighth of this production. You declined to let me have it. I now ask you for it again and will pay you 12 cents per M for what I use above one-eighth of the capacity of the well. Please let me know if you are willing to do this or if your company will give me this for one-eighth the capacity of the well; or if your company has any proposition to offer, please submit it by return mail."

[3, 4] On November 2, 1927, appellant replied to the above letter, but as indicated in the opening paragraph, to wit, "in reply to your letter of recent date in which you request to be permitted to take one-eighth of

the gas from our well on your premises," this was the request or matter to which reply was being made. Then this letter specifically specified that "we are not in position to let you take more than your one-eighth of the gas from this well, as we need it for other purposes, but as it will be a very difficult matter to prorate this gas so that you will get exactly your one-eighth, whatever amount over and above that that you happen to take we will furnish * * * at 12 cents per thousand cubic feet, computed on a basis of 2 pounds above atmospheric pressure." Appellee in his last letter had invited a counter-proposition by return mail. The above letter of appellant was in the nature of a counterproposition, and stated specifically the terms on which appellee could take gas, and the price required to be paid for any excess over his one-eighth. It is also too clear for argument that appellant, in referring to appellee's one-eighth, was not referring to unmined gas under the earth, or to the capacity of the well, but to the gas being produced, and we think it clear appellee must have so understood this letter. After the receipt of this letter appellee connected his gas line, and began taking gas, and in so doing evidenced his acceptance of the terms specified in appellant's letter (13 C. J. 271, 272; Page on Contracts, § 159, p. 237; Williston on Contracts, vol. 1, § 53), and under such contract thus made admittedly took 15,401 M cubic feet in excess of his one-eighth of the production, whereby he became liable for same at the rate of 12 cents per thousand cubic feet. The construction of the contract contended for by appellee would render same illegal, unlawful, and contrary to the public policy of the state of Texas. Pursuant to the Constitution requiring the conservation and development of the natural resources of the state of Texas (section 59a, art. 16, Const.), the Legislature passed the conservation laws of Texas applying to the production, conservation, and use of natural gas (art. 6014, R. S. 1925), and upon authority of these provisions the railroad commission of Texas, by its rule 25, provides:

"When gas from any well is being used the flow or production thereof shall be restrained to fifty per cent. of the potential capacity of same; that is to say, in any twenty-four hours the well shall not be permitted to flow or produce more than one-half of the potential capacity thereof as shown by the last quarterly gauge," etc.

[5] These constitutional and statutory provisions, rules, and regulations declare the law of the state of Texas and its public policy. Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 S. Ct. 576, 44 L. Ed. 729; Lindsley v. Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Walls v. Midland Carbon Co., 254 U. S. 300, 41 S. Ct. 118, 65 L. Ed. 276.

3 S.W.(2d)—30

Both appellant and appellee were engaged in the gas business and evidently understood the foregoing rules and statutes, and appellant in the production of gas was observing same. A construction of the contract in violation of and against the laws and public policy of the state ought not to be indulged. 13 C. J. 539. If the producer may take only 50 per cent. of the flow of gas and the lessor is entitled to one-eighth of the 100 per cent. flow, the effect is to double the royalty—make it one-fourth.

[6] Again, to construe the contract as appellee contends it should be would make its performance impossible. Such construction should not be made, if a practical and reasonable one can be made. 13 C. J. 540. The very devices necessary to catch, detain, and transport the gas from the wells makes it impossible to obtain the full capacity or open flow. It would be unfair and unjust to measure appellee's rights by the full capacity or open flow of the well, and at the same time measure the rights of appellant, the operator, by the amount he can get, acting prudently and in accordance with the laws and rules prescribed by authority of the state of Texas. There is no complaint either by pleading or evidence that appellant breached the implied covenant, if any, to reasonably produce gas from the wells in question (Brewster v. Zinc Co. [C. C. A.] 140 F. 801); there is no showing either by pleading or evidence of an attempt on the part of appellant to destroy the royalties due by refusing to produce and operate the wells (Pittsburg-Columbia Oil & Gas Co. v. Broyles, 46 Ind. App. 3, 91 N. E. 754). Appellee pleaded only a general demurrer and general denial. There is no question but that under the lease contract appellee was entitled to only one-eighth of the proceeds of the sale of the gas produced. There is no doubt but that the only change in said contract contemplated was to give appellee his royalty in gas instead of in money, and this was for his accommodation, and we think it is clear that this was the only change in fact made in said original lease contract. The evidence bearing upon such change in the original lease contract is all in writing, and is wholly insufficient to sustain appellee's contention that he was to get one-eighth of the capacity production of said wells. The evidence being clear that appellee was entitled to only one-eighth of the gas produced, and that he received in excess thereof 15,401 M cubic feet for which he agreed to pay 12 cents per thousand cubic feet, appellant was entitled to judgment for $1,848.12. We sustain appellant's assignments.

[7] It appearing that the case was fully developed, and that there is no substantial evidence to support the judgment of the trial court, said judgment is reversed and judgment here rendered for appellant for $1,848.12.