CITY OF EL CAMPO v. SOUTH TEXAS NAT. BANK OF SAN ANTONIO et al.

No. 11635.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 13, 1946.

Rehearing Denied Dec. 11, 1946.

Writ of Error Denied by Supreme Court
Feb. 5, 1947.

Looney and Clark and Chas. F. Herring, both of Austin, for appellant.

Clinton G. Brown, Jr., Brewer, Matthews, Nowlin & Macfarlane, and Davis,

Hall, Clemens & Knight, all of San Antonio, for appellees.

NORVELL, Justice.

The South Texas National Bank issued and delivered to Russ and Company its cashier's check for $5,340, payable to the City of El Campo, Texas. Subsequently, both parties claimed the proceeds of the check. Russ and Company demanded that the check be returned to it, and the City demanded payment of the check. The bank tendered into court the amount of money represented by the check and impleaded the City of El Campo and Russ and Company and its associate, Columbian Securities Corporation of Texas.

This case involves the construction of a written contract entered into between the City of El Campo as one party and Russ and Company and Columbian Securities Corporation as the other party. The agreement related to the purchase of certain Waterworks Revenue Bonds of the City of El Campo. The controlling question at issue upon this appeal is the construction of the words "unqualified approving opinion of Messrs. Chapman and Cutler" (bond market attorneys) as used in the contract.

Judgment below was against the City, which has appealed. We shall designate Russ and Company and its associate, Columbian Securities Corporation of Texas, as appellees. When necessary, we shall refer to the bank by name.

The pertinent parts of the contract involved are as follows:

"June 25, 1945
"Hon. J. S. Carroll, Mayor and City Commissioners
"El Campo, Texas
"Gentlemen:

"We understand that the City of El Campo contemplates the issuance of Waterworks Revenue Bonds in an amount not to exceed $250,000.00 for the purpose of acquiring the Waterworks System presently owned by the Central Power & Light Company and for the improvement, betterment, and extension of said system. We further understand that such bonds will be secured by and payable from the net revenues derived from the operation of the Waterworks System (and all extensions and improvement thereto) after providing for the expense of operation and maintenance. In this connection, we make you the following proposal:

"1. We hereby agree to purchase and you by your acceptance of this proposal hereby agree to sell to us at *par and accrued interest* from their date of date of delivery to us, your legally issued City of El Campo Waterworks System Revenue Bonds in an amount not to exceed $250,000. It is understood and agreed that you may deliver to us a lesser amount than $250,000 except that in any event the amount of bonds delivered to us under the terms of this contract shall be all of that portion of the $250,000 which will be required to purchase the existing System from C. P. & L. In such event that said City is not successful in acquiring said system this contract shall be null and void (after Nov. 15, 1945). * * *

"(Paragraphs 2, 3 and 4 relate to maturities and interest rates of the proposed bond issue.)

"5. We further agree that we will pay all costs in connection with the preparation of the bond proceedings by attorneys mutually agreeable, printing of the bonds, and all other usual costs incident to the issuance of said bonds including the cost of *the unqualified approving opinion of Messrs. Chapman & Cutler, Chicago, Illinois.* It is also understood and agreed that the City Council of the City of El Campo will pass all such orders as are usual and necessary to expedite the issuance and delivery of these bonds to us.

"Purchase of these bonds by us is subject *to the approval of same as to legality by the Attorney General of the State of Texas and Messrs. Chapman & Cutler, Chicago, Illinois.*

"If this proposal is accepted by you and as evidence of our good faith, we agree to promptly deposit with you a Cashier's Check payable to the City of El Campo in the amount of $5,340.00 which is to be held by you uncashed pending delivery of these bonds to us at which time it shall be re-

turned to us. Said check may be cashed by you and the proceeds retained as full and complete liquidated damages only in the event we fail or refuse to take up and pay for these bonds in accordance with the terms of this proposal Our commitment to purchase these bonds shall extend until Nov. 15, 1945, *and in the event said bonds are not delivered to us accompanied by the unqualified approving opinion of Messrs. Chapman & Cutler by that date then said Cashier's Check is to be returned to us and delivery of the bonds may be made to us thereafter only at our option.*

"Respectfully submitted,

"Columbian Securities Corporation
of Texas

and

"Russ and Company
"By Cecil J. Cox
"Authorized Representative
"By R. J. Thomasma

"The above proposal is hereby accepted by order of the City Council of the City of El Campo and the bonds are hereby awarded to the Columbian Securities Corporation of Texas, and Russ and Company, both of San Antonio, Texas.

"J. S. Carroll
"Mayor, City of El Campo, Texas.

"Attest:

"Ruth Bourn
"City Secretary, City of El Campo, Texas.

"(Seal)"              (Italics ours.)

On November 15, 1945, the representatives of the contracting parties and the Central Power and Light Company met at the Frost National Bank in San Antonio, Texas, for the purpose of closing the deal. The parties had in their possession the following communication from Chapman and Cutler:

"Law Offices of
"Chapman and Cutler
"111 West Monroe Street
"Chicago 3
"November 13, 1945

"Russ & Company
"South Texas Bank Building
"San Antonio 5, Texas

"Gentlemen:

"We understand that $205,000 Water System Revenue Bonds of the City of El Campo, Texas, are to be delivered to you and paid for in San Antonio on Thursday and that as a part of the transaction Central Power and Light Company is going to convey the El Campo water system to the city. We have been asked to have our final opinion escrowed in San Antonio ready for release on Thursday.

"Because of the shortness of the time remaining we are writing directly to you. You will recall how the Fort Stockton Gas Revenue Bond delivery was handled. This El Campo transaction is of similar nature and for the reason which made it impossible for us to escrow a final opinion there, we cannot do so here.

"We have examined all of the showings submitted to date and have found them satisfactory. We are now prepared to approve the bonds upon submission of the following:

"1. A title opinion in the enclosed form dated as of the date of delivery of the bonds. We are today sending two additional copies of the form by air mail to Judge Jessup.

"2. A treasurer's receipt in the form which has heretofore been sent to us and which is satisfactory.

"3. A certificate dated as of the date of delivery evidencing the absence of any pending litigation affecting the city, the bonds or the water system, and evidencing the absence as of that date of any pledges of the water revenues other than to the payment of the issue of $250,000, of which these bonds are a part.

"4. After its delivery, the executed deed, on which is to appear the Recorder's endorsement evidencing proper recording of the deed in Wharton County.

"Mr. Everett L. Looncy wired the Texas office of the company yesterday to send us by air mail a copy of the proposed form of deed and a plat on which we can check the real estate descriptions. These documents have not reached us today but should be here tomorrow. As soon as we have examined them, we will wire you whether they are satisfactory.

"After you have received our wire as to the sufficiency of the deed, we hope that you will feel in position to take up and pay

for the bonds when the other documents listed above are made available in executed form on Thursday. A little delay in the issuance of our final opinion may occur because of the necessity of having the deed recorded, but in a small county such as Wharton, it should be possible to arrange with the Recorder to record the deed immediately after it is delivered to him so that it can be returned for submission to us in a matter of hours.

"Our opinion approving these bonds will refer to the title opinion somewhat as did our opinion on the Fort Stockton bonds.

"Yours very truly,
"Chapman and Cutler"

Appellees refused to accept the bonds tendered to them by the City on November 15, 1945, for the sole and only reason that said bonds were not "accompanied by the unqualified approving opinion of Messrs. Chapman & Cutler." It appears that the City was in a position to meet all of the requirements outlined in the letter of Messrs. Chapman and Cutler, dated November 13, 1945, at the time and place set for the closing of the deal with the exception of the recording of the deed in Wharton County, provided appellees paid for the bonds so that the treasurer's receipt could be handed over, the deed secured from the Central Power and Light Company, and a title opinion covering the transaction dated and delivered. The City had in its possession the required nonlitigation certificate.

Appellant made a good faith effort to close the deal and, as we understand appellees' position, they do not contend that the City was remiss in these particulars, but based their refusal to accept bonds upon the inability of the City to deliver the type of legal opinion which they contend was called for by the contract.

The record discloses that the bonds, which were the subject matter of the contract of June 25, 1945, were, after November 15, 1945, sold to other parties and an opinion of Messrs. Chapman and Cutler was obtained in connection with this sale. This opinion is here set out as it is undoubtedly the type of opinion referred to in the letter of Chapman and Cutler dated November 13, 1945, as a "final opinion":

"Chapman and Cutler
"111 West Monroe Street
"Chicago 3
"December 7, 1945

"We hereby certify that we have examined certified copy of the proceedings of the City Council of the City of El Campo, Wharton County, Texas, passed preliminary to the issue by said city of its Water System Revenue Bonds to the amount of $205,000 (being part of a total authorized issue of $250,000), dated November 1, 1945, denomination $1,000, numbered 1 to 205, inclusive, due serially on November 1 of each of the years 1947 to 1962, inclusive (here follows detailed description of bonds), and we are of the opinion that such proceedings show lawful authority for the issuance of said bonds under the laws of the State of Texas now in force.

"We further certify that we have examined executed bond number one and find the same in due form of law and in our opinion said bonds are valid and legally binding special obligations of the City of El Campo and, together with the remaining bonds of the authorized issue when delivered, are payable from and secured by pledge of the revenues of the water system of said city remaining after there have been first paid therefrom the reasonable cost of operating and maintaining the system. As to matters pertaining to the title of the city to said system and as to the regularity of the corporate proceedings had in the authorization and conveyance of the system to the city, we have examined an opinion of title written November 30, 1945, by Donald M. Duson, an attorney of El Campo, Texas, and as to such matters this opinion is written in reliance thereon.

"Chapman and Cutler"

Appellees take the position, and evidently the trial court agreed with them, that the phrase "unqualified approving opinion of Messrs. Chapman and Cutler" means a final market opinion in substantially the same form as that above set out.

If this construction be adopted, then it follows that the contract of June 25, 1945, is a mere nudum pactum, unenforcible at the instance of either party thereto, by reason of the presence in the contract of a

condition precedent which is impossible of performance. 12 Am.Jur. 610, § 115.

■■ The municipal bonds here involved are Texas revenue bonds. Statutory authority for the issuance of this type of security is found in Articles 1111–1118, Vernon's Ann.Civ.Stats. The distinguishing feature of revenue bonds issued in accordance with the articles cited is that the holders of such bonds have no claim upon funds raised or to be raised by taxation in order to secure payment of their obligations. Articles 1111 and 1114. Whenever the income of a water system is encumbered in connection with the issuance of bonds for a permissible statutory purpose, such bonds are a charge against the revenues of the water system subject to the reasonable expenses of maintenance and operation of the system. Article 1113.

■ One essential prerequisite to the practical validity or enforcibility of revenue bonds secured by an encumbrance of the revenue of a "system" is the ownership of a "system" by the municipal authority issuing the bonds.

The parties to the contract of July 25, 1945, contemplated that the City would "acquire" a Waterworks System. This system could not be acquired free and clear of all liens or claims of the vendor until it had been paid for. A final market opinion relating to the type of bonds here involved could not be rendered until after the City had actually bought and paid for, and thus acquired a Waterworks System. A contract which contemplates that the proceeds of a revenue bond issue shall be used to acquire a "system," and then provides that the purchase price for the bonds shall not be paid until after the Waterworks System has been acquired is obviously a contract incapable of being enforced.

Appellees contend that the delivery of an "unqualified approving opinion" was a condition precedent, but contend that it was possible of performance. Upon this point appellees argue:

"This could have been accomplished by the city going to the Frost Bank about ten days prior to November 15, 1945, along with Russ and the C. P. & L. representative. The city could have deposited the bonds in escrow. Russ could have deposited the purchase money in escrow and the C. P. & L. could deliver the deed with the understanding that the escrow agent would hold the money and the bonds until the deed was properly recorded and the unqualified approving opinion of Chapman & Cutler obtained. Of course the city in addition to the recorded deed, would have had to also furnish Chapman & Cutler with the other items requested by Chapman & Cutler in their letter of November 13th which they had to have before they could approve the bonds. Upon the delivery of the approving opinion to the escrow bank, the bank would deliver the bonds to Russ, purchase money to the C. P. & L. and the city would have its waterworks system. In the event no approving opinion could be obtained the bonds would be returned to the city, purchase money to Russ, and at the time of the original deposit the city could have also deposited a deed reconveying the water works system to the C. P. & L. in the event of such inability to procure a final unqualified opinion of Chapman & Cutler."

■ Appellees' argument is that appellant and appellees, together with the Central Power and Light Company, could have made a further agreement which could have been carried out in accordance with the escrow plan suggested in appellees' brief. This is beside the point. In determining whether or not a particular construction of a contract would result in a conclusion that the contract was invalid because based upon a condition precedent impossible of performance, the all important consideration is the terms and provisions of the contract actually written by the parties, and not some hypothetical agreement which possibly could have been but actually was not made by the parties.

■ Under well-recognized principles of law, the construction of the contract urged by appellees must be rejected if there be some reasonable construction of the contract which would render it valid and enforcible. "It is not to be presumed that the parties intended that an impossible thing should be done," or "that the parties deliberately entered into an agreement calling for an impossible condition or event as a test of performance." 17

C.J.S. Contracts § 318, note page 739. "A construction which renders performance of the contract possible will be adopted, rather than one which renders its performance impossible or meaningless, unless the latter construction is absolutely necessary; and it has been held that no matter how clear the ordinary significance of the words, they must not be given a meaning which, when applied to the subject matter of the contract, will render performance impossible." 17 C.J.S., Contracts, § 318, page 738. See also Magnolia Petroleum Co. v. Stroud, Tex.Civ.App., 3 S.W.2d 462, 465; Saunders v. Clark, 29 Cal. 299, 300, 306; Danley v. Merced Irrigation Dist., 76 Cal. App. 52, 243 P. 676, 678; 12 Am.Jur. 793, § 251.

Generally, a legal opinion either expressly or impliedly relates to a certain date or time. As above pointed out, a "final market opinion" relating to revenue bonds can not be obtained until *after* the bonds have been sold and delivered to a purchaser and the consideration therefor paid to the issuing authority. On the other hand, the Attorney General's opinion, also called 'for by the contract, must be rendered *before* the bonds are offered for sale. Articles 709, 4398, Vernon's Ann.Civ.Stats.

Because the opinion of the Attorney General is issued before the sale of bonds and a market attorney's final opinion is issued after such sale, it could hardly be said that one is a qualified approving opinion and the other is an unqualified approving opinion. Both are unqualified approving opinions as of their respective dates. The final market opinion simply covers an additional transaction, the first negotiation of the bonds, which is not covered by the Attorney General's opinion. An opinion might be prepared relating to the validity and marketability of bonds ten years after their first negotiation. Such an opinion would probably cover numerous transactions occurring after the first negotiation, but the fact that such opinions may be and are occasionally written does not prevent opinions as to the legality of the bonds written prior thereto from being properly regarded as "unqualified approving opinions." Time or date is not necessarily the distinguishing characteristic of an "unqualified approving opinion."

We conclude, assuming as we must that the parties intended to make an enforcible contract, that the time to which the approving opinion called for in the contract relates necessarily precedes the time when the consideration is to be paid for the bonds in accordance with the contract. In other words, the opinion which the parties contracted for was not an opinion covering the transaction wherein the consideration for the bonds was to be paid, and the transactions which would follow in natural sequence therefrom.

This brings us to a consideration of the Chapman and Cutler letter of November 13, 1945. While this letter contains some additional details, it is in substance a preliminary market opinion in that it states that all proceedings to date of opinion are in legal form, contains closing instructions and a definite commitment to issue a final market opinion when the closing instructions have been carried out.

It is stated in the letter that, "We have examined all of the showings submitted to date and have found them satisfactory." The record of proceedings had with reference to the bonds up until November 13, 1945, was thereby approved.

The matters set forth in the numbered paragraphs of the letter are in no sense qualifications of the expressed approval of all proceedings had prior to November 13, 1945. On the contrary, they are in the nature of closing instructions—stated requirements as to matters which in the contemplation of the writers would take place after receipt of the letter. The things required to be done were all dependent upon the payment of the consideration which appellee agreed to pay the City for its bonds.

We hold that, under the contract construed in accordance with the rules above set out, the requirement that the bonds be delivered to appellees, "accompanied by the unqualified approving opinion of Messrs. Chapman & Cutler" was met by the delivery of that firm's opinion dated November 13, 1945. The proceedings had with reference to the bond issue prior to that time were approved. The parties in effect were notified that the deal was ready to close. All requirements contained in the preliminary opinion upon which the commitment

for a final opinion was based, relate to actions or undertakings which would necessarily take place after the payment of the agreed consideration for the bonds. A preliminary opinion is obviously written for deal closing purposes, and we believe it a reasonable construction of the contract, to conclude that it was this kind of an opinion that the parties contemplated when they entered into the contract of July 25, 1945.

We further hold that when appellees, on November 15, 1945, refused to pay the agreed purchase price for the bonds involved, they breached the contract and are liable for the liquidated damages stipulated therein.

The judgment of the trial court is reversed, and judgment here rendered that the City of El Campo do have and recover as against Russ and Company and Columbian Securities Corporation of Texas, the sum of $5,340, being the amount of the fund deposited with the clerk of the court below, and said clerk is further ordered to forthwith pay said sum over to said City of El Campo. It is further ordered that the City of El Campo have judgment against Russ and Company and Columbian Securities Corporation of Texas for interest on $5,340 at the rate of six per cent per annum from November 16, 1945, until paid, together with all costs of suit in this Court and the court below, including the amount of $200 allowed to South Texas National Bank of San Antonio as and for attorney's fees.

Reversed and Rendered.