**CITY OF FORT WORTH, Appellant,**

v.

**Ken GROVES, Appellee.**

**No. 2–87–017–CV.**

Court of Appeals of Texas, Fort Worth.

Feb. 25, 1988.

Rehearing Denied March 31, 1988.

William W. Wood, Asst. City Atty., Dalton Gandy, Asst. Dist. Atty., Fort Worth, for appellant.

Hill, Heard, Oneal, Gilstrap & Goetz, P.C., Frank Gilstrap, Ned Webster, Marcia Wise, Arlington, for appellee.

## OPINION

LATTIMORE, Justice.

Appellee, Ken Groves, filed the instant lawsuit pursuant to the Texas Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM.CODE ANN. sec. 37.001 et seq. (Vernon 1986), seeking a declaratory judgment and permanent injunction to invalidate an agreement between Tarrant County and the City of Fort Worth, signed August 26, 1986, by which Tarrant County "leased" the Tarrant County Convention Center to appellant, the City of Fort Worth.

After a non-jury trial, the court below declared the lease agreement void, entered a permanent injunction against the defendants[1] and awarded attorneys' fees against all defendants, jointly and severally.

Appellant asserts thirty-six points of error attacking the trial court's determination of standing; sufficiency of the evidence; compliance with the Open Meetings Act; compliance with bond requirements; the findings of the trial court that the lease is a gift; the lending of credit by the City

of Fort Worth ("City"); entering into the lease being an arbitrary and capricious act and a breach of a fiduciary duty on the part of the Commissioners' Court; and the lease as a sale.

The judgment is affirmed in part, reversed and rendered in part.

We are indebted to the attorneys for the parties, Ken Groves and the City of Fort Worth, and to the attorneys for the amicus curiae, the Greater Fort Worth Hotel–Motel Association, Downtown Fort Worth, Inc., The Texas Municipal League and The Texas City Attorney's Association, for their excellent briefs.

## THE HISTORY

In 1964, Tarrant County voters approved the issuance of 16.5 million dollars of general obligation bonds. A portion of the funds from the sale of the bonds was used to build the Tarrant County Convention Center ("TCCC") and the remainder to build Turnpike Stadium in Arlington, Texas.

In 1968, the Commissioners' Court approved the issuance of $2,000,000 in First Mortgage special revenue bonds for the construction of a parking facility adjacent to the TCCC; these bonds are not payable from tax proceeds, but from the revenue of the parking area that the bonds were issued to construct.

In 1980, voters approved 20.35 million dollars in general obligation bonds, 11.5 million dollars of which went into TCCC. The total unpaid balance of general obligation bonds attributable to the TCCC is $8,250,000.

By 1983, TCCC was becoming an increasing financial drain to Tarrant County ("County"). A committee was appointed by County Judge Mike Moncrief, the Mayor of Fort Worth, and the head of Fort Worth Chamber of Commerce. With the purpose of having broad representation from all areas of interest in TCCC, the committee

---

1. Judgment was entered against Tarrant County, Texas, the Tarrant County Commissioner's Court, members of the Tarrant County Commissioner's Court in their official capacities, and the City of Fort Worth. Only the City of Fort Worth appeals.

consisted of the following: Rice Tilley as chairman of the committee; appointed by the Commissioners' Court, Judge Mike Moncrief; S.J. Stovall, former mayor of Arlington, later replaced by O.L. Watson; from Fort Worth, Dick Anderson; Mayor Bob Bolen; Councilman Bert Williams; Councilman Dick Newkirk, replaced upon his death by Councilman Estil Vance; from the Tarrant County Convention Center Advisory Board, appointed by the County Commissioners, chairman Billy Farrar and former chairman John McMillan; from the Fort Worth Chamber of Commerce, Jodie Grant and John Stephenson; and from the Convention and Visitors Special Fund, chairman Curtis Frazier and Don Henderson.

After this base committee, there was an additional staff committee comprised of various members from the municipalities: Jack Benson, County Auditor; Bob Hershert, City Manager of Fort Worth, later replaced by Doug Harmon; Mark Jeanette, Executive Director of the Convention and Visitors Bureau; Don Magness, of Will Rogers Memorial Complex; Clete McAlister, Director of Tarrant County Convention Center; and Bill Shelton, President of the Fort Worth Chamber of Commerce. After reviewing the problems, the lease agreement before this court was proposed.

The lease provided that the City would assume, on behalf of the County, all operational responsibility of the TCCC, for a period of thirty years, including $2,000,000 in improvements to be performed within the next two years. The lease agreement also provided that the City would use the TCCC, its parking facilities and personal property, solely for public purposes. The County would remain responsible for the remaining principal balance of $8,250,000 existing bond indebtedness.

THE TRIAL

Both parties waived a jury trial; the court found for the plaintiff. The trial court issued the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. Ken Groves is an adult citizen who resides at 706 Vail Drive, Arlington, Texas and is a taxpayer of Tarrant County, Texas.

2. Defendant Tarrant County, Texas is a duly-created political subdivision of the State of Texas.

3. Defendant Tarrant County Commissioners Court, by virtue of the statutes of the State of Texas, is given and charged with the responsibility for care, control, and management of the affairs of Tarrant County, Texas.

4. Defendant City of Fort Worth, Texas is a duly-incorporated municipality situated in Tarrant County, Texas.

5. Exhibit "A" attached to Plaintiff's Fifth Amended Petition (and all previous petitions), was stipulated by all parties to be a true and correct copy of the Minutes of the Commissioners Court meeting of August 25, 1986, and a true and correct copy of the "Convention Center Lease Agreement" attached to said Minutes (hereinafter the "Agreement").

6. The bulletin board in the basement of the Tarrant County Courthouse and the fifth floor of the Tarrant County Administration Building were not places readily accessible to the general public at all times on the dates August 21, August 22, August 23, August 24, and August 25, 1986.

7. The public notice of the agenda for the Commissioners' Court meeting of Monday August 25, 1986 was not posted in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting.

8. Neither Defendant Tarrant County nor Defendant City of Fort Worth obtained an appraisal of either the fair market value of the Convention Center property, or of any property interest therein, or an appraisal of the value of any interest, including a leasehold interest in said property, prior to entering the Agreement on or about August 25, 1986.

9. The rental amount in the Agreement was not an "adequate rental" for the use of that property.

10. The remaining feasible economic life of the Convention Center is 30 years.

11. This Court finds that the Commissioners Court breached its fiduciary duty by entering into the Agreement.

12. The Court hereby finds that the County Commissioners Court, in entering into the Agreement has not complied with (1) the bond requirements under its order of June 17, 1968, and (2) the covenants of the revenue bonds which were to be paid by revenues from the parking facility.

13. This Court further finds that unless a permanent injunction is entered irreparable harm will occur.

14. The Court hereby finds that Plaintiff was obliged to obtain legal services from the law firm of Hill, Heard, Oneal [sic], Gilstrap & Goetz in this cause and the Court further finds that the fees charged by said firm were and are reasonable fees in Tarrant County, Texas, and the Court further finds that the hours spent and the work done by the firm were necessary for the preparation of this case. The Court further finds that reasonable and necessary attorneys' fees are in the amount of $40,000 through the trial of this cause, an additional $10,000 in the event this cause is appealed to the Texas Court of Appeals; an additional $5,000 in the event that writ of error is sought to the Supreme Court of Texas and an additional $5,000 in the event writ of error to the Supreme Court of Texas is granted.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction over this action and has jurisdiction to enter a declaratory judgment regarding whether the Commissioners Court was without authority to enter into the purported lease agreement in question and has jurisdiction to order injunctive relief.

2. Plaintiff Ken Groves has standing to bring this suit.

3. The principle of sovereign immunity is not applicable to this suit.

4. The action of the Commissioners Court on August 25, 1986, by which the Commissioners Court entered into the Agreement with the City of Fort Worth, is null and void, as a violation of: Article 6252–17 Tex.Rev.Civ.Stat.Ann. (Vernon's Supp.1987); Article 5421c–12 Tex.Rev. Civ.Stat.Ann. (Vernon's Supp.1987); Article 1269j–4.2 Tex.Rev.Civ.Stat.Ann. (Vernon's Supp.1987); Article 2372d–3 Tex. Rev.Civ.Stat.Ann. (Vernon's Supp.1987); Article 3, Section 52 of the Texas Constitution; and Article 11, Sections 3 & 7 of the Texas Constitution.

5. The lease for 30 years of the Convention Center and/or the personalty within the Convention Center is, in fact, a sale of said property.

6. The lease of the Convention Center and the personalty therein for $30.00 ($1.00 per year for 30 years) is a gift to the City of Fort Worth.

7. The County's continuing payments on the bonded indebtedness are a "lending of its credit" to the City.

8. The Commissioners Court, who holds the Convention Center (and all county-owned property) in trust for the residents of Tarrant County owes a fiduciary duty to manage, control and dispose of said Convention Center in a manner in keeping with that trust.

9. The actions of the County Commissioners Court in entering into the Agreement constitute an arbitrary and capricious action and thus said agreement is void and ineffective.

10. There is no adequate remedy at law for Plaintiff.

11. Plaintiff is entitled to the relief he seeks.

12. Plaintiff is entitled to his reasonable and necessary attorneys' fees.

## PUBLIC STANDING

■ By its first, second, and third points of error, appellant contends that appellee

did not have standing to bring the present suit; that as a taxpayer, appellee must allege, absent statutory authority, an injury or damage other than as a member of the general public; and that appellant does not have standing under the Open Meetings Act of TEX.REV.CIV.STAT.ANN. art. 6252–17, sec. 3 (Vernon Supp.1988),[2] in contravention of the trial court's conclusions of law.

Groves brings this suit as a citizen and resident of the City of Arlington, Tarrant County, Texas. He alleges he is a taxpayer of Tarrant County, Texas. In this capacity or capacities, he complains of acts of the Commissioners' Court and the City. We believe that Ken Groves's standing to maintain a suit against the County and the City falls into two categories; his public standing under the Open Meetings Act, article 6252–17, and his public and private standing as an alleged injured taxpayer.

Section 3(a) of the Open Meetings Act states that "any interested person, including bona fide members of the news media, may commence an action either by mandamus or injunction for the purpose of stopping, preventing, or reversing violations or threatened violations of this Act by members of a governing body." TEX. REV.CIV.STAT.ANN. art. 6252–17, sec. 3(a).

The primary purpose of the Act is that a meeting such as the one involved here is required to be "open to the public." Its provisions have been reinforced from time to time by the legislature. To afford the "public" the opportunity to attend such meetings to hear and be heard, stringent notice requirements were imposed. These requirements were not met, as we will see. Groves has been deprived of his opportunity to present to the Commissioners, at the meeting where they took the action of which he complains, the very views expressed in his petition. He has been deprived of the opportunity to hear the arguments and views of others, pro and con, as expressed at the meeting or might have been expressed in response to his presentation. The Commissioners were deprived of the elements of give and take of an open meeting. It is possible there were others who might have availed themselves of the opportunity to participate if the notice requirements had been met.

The courts may not interfere with the discretionary or political decisions of the governmental bodies. We do not propose to do so. The citizen is the smallest political unit of the democracy whose voice should be a guide to quasi-legislative bodies such as the Commissioners' Court. The legislature has decreed that such units must have an opportunity to hear and be heard. We should enforce such decree. It is doubtful that the legislature intended that any busybody should have access to the courts to undo or prevent the acts of county or city governments, even if unlawful. Hence the concept of "standing."

It is an easy concept to open the courts to persons who have been, in fact, injured by action of governmental units in the tort or breach of contract sense. It is not so easy when the breach is of a notice requirement.

Section 3(a) of the original act did not contain the portion including reporters as "interested persons," nor did it contain the present last sentence "[A]n action taken by a governmental body in violation of this Act is voidable." *Compare* TEX.REV.CIV. STAT.ANN. art. 6252–17, sec. 3(a) (Vernon 1979). The historic route against governmental action was by way of mandamus or injunction. Jaffe, *Standing to Secure Judicial Review (pts. 1 & 2)*, 74 HARV.L. REV. 1265, 1314, 75 HARV.L.REV. 255 (1961). In the eyes of the courts and the legislature that was not sufficient. Access may now be had to the courts to set aside actions taken in violation of this Act.

---

2. We note that at the time this case was tried, the trial court had before it a Vernon's Statute pocket part with an earlier date. The contents of that supplement are identical to the wording of article 6252–17 cited herein; the pertinent parts of the statute cited within this opinion have not been amended since 1979.

Appellant alleges that this statute only authorizes injunctions to prevent future violations of the Act, and does not provide injunctive relief from subsequent activities which are in violation of the Act. We disagree. If appellant's allegations were true, then the legislature's statement of "threatened violations" would be ineffective and unnecessary. Nonetheless, in view of the lack of demonstrated probable irreparable injury, the permanent injunction was inappropriate. The decision that the lease is void is sufficient public protection.

In reviewing a taxpayer's standing to maintain a suit of this nature, the general rule in Texas is that a taxpayer is required to be a "person aggrieved" or a person who has a special interest in the matter. *Scott v. Board of Adjustment,* 405 S.W.2d 55, 56 (Tex.1966). Special interest is most commonly shown by the adverse imposition of a tax. *City of West Lake Hills v. State Ex. Rel. City of Austin,* 466 S.W.2d 722, 727 (Tex.1971).

The interest of Groves, even though slight as an affected taxpayer and citizen, coupled with the magnitude of the need to protect the open meeting concept and the allegations of impropriety, even if the latter are not eventually substantiated, is sufficient public "standing" for the maintenance of this portion of the suit. We will defer discussion of "private" standing until later in the opinion; it is not necessary to the disposition of this issue. Therefore, we overrule appellant's points of error one, two and three as they relate to appellee's standing to challenge the propriety of notice under the Open Meetings Act.

## WAIVER

█ Appellee's reply points of error nine and ten argue that appellant has waived this issue of a lack of standing, by failure to file a verified plea in abatement prior to trial. The matter of "standing" is not the same as "capacity." The City's plea in abatement is not required to be verified under the Texas Rules of Civil Procedure, rule 93. *See Texas Indus. Traffic League v. Railroad Com'n,* 633 S.W.2d 821, 823 (Tex.1982). On the other hand, failure of the City to urge in limine the matter of lack of standing on the part of Groves does not waive the necessity of Groves establishing this standing to maintain this suit. If Groves has no standing to maintain this suit, he has no case or controversy to urge. *See Develo–Cepts, Inc. v. City of Galveston,* 668 S.W.2d 790, 793 (Tex.App.—Houston [14th Dist.] 1984, no writ). However, lack of standing may not be raised for the first time on appeal. *Texas Indus.,* 633 S.W.2d at 823. We are not able to say the trial judge abused his discretion in permitting a late filing and consideration of the plea in abatement of the City.

## OPEN MEETINGS ACT

Appellant's points of error four through nine primarily contend the County did not fail to comply with the Open Meetings Act and thus, the lease agreement was not void. Appellant argues that the findings of fact and conclusions of law which refer to the County's adherence to the Open Meetings Act are, respectively, factually insufficient as a matter of law, as well as against the great weight and preponderance of the evidence.

More specifically, appellant maintains that the City adhered to the requirements of the following three sections of the Open Meetings Act:

Sec. 3A. (a) *Written notice of the date, hour, place, and subject of each meeting held by a governmental body shall be given before the meeting as prescribed by this section.* The requirement for notice prescribed by this section does not apply to matters about which specific factual information or a recitation of existing policy is furnished in response to an inquiry made at such meeting, whether such inquiry is made by a member of the general public or by a member of the governmental body. Any deliberation, discussion, or decision with respect to the subject about which inquiry was made shall be limited to a

proposal to place such subject on the agenda for a subsequent meeting of such governmental body for which notice has been provided in compliance with this Act.

. . . .

(d) A county governmental body shall have a notice posted on a bulletin board located at a place convenient to the public in *the county courthouse.*

. . . .

(h) *Notice of a meeting must be posted in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting,* except that notice of a meeting of a state board, commission, department, or officer having statewide jurisdiction, other than the Industrial Accident Board or the governing board of an institution of higher education, must be posted by the Secretary of State for at least seven days preceding the day of the meeting. In case of emergency or urgent public necessity, which shall be clearly identified in the notice, it shall be sufficient if the notice is posted two hours before the meeting is convened. . . . Provided further, that where a meeting has been called with notice thereof posted in accordance with this subsection, additional subjects may be added to the agenda for such meeting by posting a supplemental notice, in which the emergency or urgent public necessity requiring consideration of such additional subjects is expressed. In the event of an emergency meeting, or in the event any subject is added to the agenda in a supplemental notice posted for a meeting other than an emergency meeting, it shall be sufficient if the notice or supplemental notice is posted two hours before the meeting is convened, and the presiding officer or the member calling such emergency meeting or posting supplemental notice to the agenda for any other meeting shall, if request therefor containing all pertinent information has previously been filed at the headquarters of the governmental body, give notice by telephone or telegraph to any news media requesting such notice and consenting to pay any and all expenses incurred by the governmental body in providing such special notice. The notice provisions for legislative committee meetings shall be as provided by the rules of the house and senate.

TEX.REV.CIV.STAT.ANN. art. 6252–17, sec. 3A (emphasis added).

■ The content of these provisions is significant. Any actions taken by a governmental entity at meetings where the Act's requirements were violated, subject those actions to judicial invalidation by those adversely affected by such actions. *See Lower Colorado Riv. Auth. v. City of San Marcos,* 523 S.W.2d 641, 646 (Tex. 1975); *Garcia v. City of Kingsville,* 641 S.W.2d 339, 341 (Tex.App.—Corpus Christi 1982, no writ). In 1987 the legislature added to section 3(a) of article 6252–17 the sentence "[a]n action taken by a governmental body in violation of this act is voidable," being a recitation of the case law as it stood at the time of the Commissioners' Court meeting in question.

■ Appellant contends that the evidence does not support the findings that notices for the August meeting were not posted in a place readily accessible to the public at all times, 72 hours prior to the meeting, as required by section 3A(h) of the Act.

The notice of the meeting was posted on the bulletin board in the basement (ground floor) of the Tarrant County Courthouse more than 72 hours prior to the meeting in which the lease agreement was considered and voted on by the Commissioners' Court. During the night and on weekends access to the posted notice was only by permission of a security officer stationed at a ground floor door. Unfortunately the officer, a deputy sheriff, was also required to make "rounds" of the courthouse. These rounds would cause him to be away from his post from time to time. An electric bell was

available for the use of those seeking entrance from the outside of the building. Sometimes it might take as long as ten minutes for the security officer to respond to the bell if he was away from his post making his rounds. On occasion, persons seeking a response to the bell would leave before the officer responded.

The notice requirement of article 6252–17, section 3A(a) is to be strictly construed. *Thornton v. Smith County,* 690 S.W.2d 949, 953 (Tex.App.—Tyler 1985), *aff'd in part, rev'd in part,* 726 S.W.2d 2 (Tex. 1986). The court of appeals's opinion in *Thornton* by Justice Colley carefully analyzes the history, both judicially and legislatively, of article 6252–17, section 3A and comes to the conclusion that the Act is to be strictly construed; the Supreme Court of Texas agrees. *Id.* In this instance the posting requirements met all except the "at all times" requirement. While the requirements of safety and protection of property may very well justify access to a public building under scrutiny of security personnel without violating the requirement of the postings being readily accessible to the public, the posted notice in the instant case was not readily accessible *at all times* to the public and violated the requirements of the Act.

The trial court's findings of fact six and seven are supported by sufficient evidence and appellant's points of error four through nine are overruled.

■ We are therefore compelled to sustain the trial court's determination that the lease under attack is void as an act of the Tarrant County Commissioners' Court done in violation of the Open Meetings Act.

This determination effectively resolves this appeal except for the points of error concerning attorneys' fees. Nonetheless, in view of the Texas Supreme Court's expression that the intermediate courts address every issue raised and appropriate to the final disposition of the appeal, we comply.

THE LEASE

Appellant's points of error ten through seventeen attack the trial court's holding:

that the lease is a gift to the City; that the lease did not provide for adequate rental to the County; and that the lease was not supported by substantial benefits to the County, further restricting the use of TCCC to a public purpose. Appellant challenges the findings of fact and conclusions of law which pertain to violations of TEX. CONST. art. III, sec. 52 and art. XI, sec. 3; and TEX.REV.CIV.STAT.ANN. art. 2372d–3 (Vernon 1971); *see now* TEX. GOV'T CODE ANN. secs. 319.004 and 319.005 (Vernon Supp.1988), as being legally and factually insufficient, and against the great weight and preponderance of the evidence.

In its nineteenth through thirty-first points of error, appellant furthers extensive arguments alleging the trial court erred in holding: failure to pay the bond indebtedness from current funds; benefits of the lease to the County; no breach of fiduciary duty; no sale of TCCC; and limited use and possession by the City of TCCC. Appellant challenges the conclusions of law which pertain to violations of TEX.CONST. art. XI, sec. 7 as being legally and factually insufficient, and against the great weight and preponderance of the evidence. These allegations culminate in appellant's contention that the action of the Commissioners' Court in entering into the lease agreement was not arbitrary and capricious.

Groves in his reply points of error five, six, and eight attacks the propriety of the lease.

■ Article V, section 8 of the Texas Constitution gives the district courts "general supervisory control" over the County Commissioners' Court. TEX.CONST. art. V, sec. 8; *Scott v. Graham,* 156 Tex. 97, 292 S.W.2d 324, 325–26 (1956). The legislature has not established a method or procedure for invoking the appellate jurisdiction or supervisory control of the district court over the Commissioners' Court by any statutory enactment. *Scott,* 292 S.W.2d at 324. However, it is clearly established that judicial review of acts of the Commissioners' Court is limited to finding the existence of

substantial evidence or ascertaining whether the action taken was arbitrary or capricious. *See Cameron County Good Govern. League v. Ramon*, 619 S.W.2d 224, 230 (Tex.Civ.App.—Beaumont 1981, writ ref'd n.r.e.).

■ The act of the Commissioners' Court in participating in the lease is not subject to the same standard of attack as the failure to provide proper notice of the meeting in which the lease was approved. The supervisory powers of the district court over the judgments of a Commissioners' Court can only be invoked when such court acts beyond its jurisdiction or clearly abuses discretion conferred upon it by law. *See Yoakum County v. Gains County*, 139 Tex. 442, 163 S.W.2d 393, 396 (1942). "No principle of law is better settled than that acts of discretion and findings of fact on the part of public officers to which such power is confided, including Commissioners' Courts, will not be reviewed on appeal." *Williams v. Castleman*, 112 Tex. 193, 247 S.W. 263, 269 (1922).

■ The Commissioners' Court had exhaustively studied and analyzed its perceived problems in operating the TCCC. They were very much aware of the limitations of their means of relief. In the absence of a showing of fraud or bad faith, it is not for the courts to declare a document conforming to the language of a lease having terms reasonable to a lease, to be something else. Particularly since it was the desire of the City and the County to avail themselves of provisions of the statute permitting a lease. Groves wishes to seize upon the $1.00 per year rental provision as substantial evidence of unreasonably inadequate consideration accruing to the County for the lease. Nowhere do the statutes or the constitution of Texas refer to the term "rental" in the matter of the county supervision of county property. The Commissioners, in their judgment, considered the relief from continued operating loss of $500,000 to $1,000,000 annually; from the remote chance of overall profit from opera-

tions; the recommendations of their auditor and public-spirited citizens; the provisions requiring the City to operate and maintain the TCCC for the benefit of the public; the availability to the City of funds from the "bed tax"; that no additional tax burden would result; and possible reduction of the tax burden which may occur. There were, no doubt, additional facts before the Commissioners at the time of their decision. That is the function of the Commissioners' Court, to gather the facts and make a decision.

With reference to the general revenue bonds, the principal of which is in part unpaid, these are existing bonds. Tax revenue requirements to meet the bond obligation will not be adversely affected by the lease. There is no statutory or constitutional requirement that the bond obligation be assumed by a lessee or that the lease consideration accruing to the County be equal to the unpaid portion of the bonds, either principal or interest. It is not a "sham" for the County and City to use a contractual method that complies with the statutes. The complaint of Groves that it is unfair to the citizens of the City of Arlington for Arlington to purchase a convention center and the City of Fort Worth to lease a center is a matter of political consideration, not judicial.

There is no showing in this record that the Commissioners' Court abused their discretion, or acted arbitrarily and capriciously.

We therefore sustain appellant's points of error number ten through thirty-one to the extent that they complain of the trial court's determination that the lease was invalid for other than violation of the Open Meetings Act. We conclude that for the trial court to determine that the lease contract was a gift, a sale, a lending of credit, a breach of fiduciary duty by the Commissioners, unlimited use of TCCC by appellant and/or failure to pay the current bond indebtedness from current funds is to improperly substitute his discretion for theirs. The findings and holdings by the trial court

in this regard are against the greater weight and preponderance of the evidence and are manifestly unjust. *See Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1969) (per curiam); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

## PUBLIC OR PRIVATE STANDING AS A TAXPAYER

■ The revenue bonds have no tax effect on county taxpayers. *See City of El Campo v. South Texas Nat. Bank*, 200 S.W.2d 252, 256 (Tex.Civ.App.—San Antonio 1946, writ ref'd). The sole security for the County's bonded indebtedness is an irrevocable first lien upon, and a pledge of the revenue acquired from, the parking station and the underlying realty to the bondholders through their trustee, Fort Worth National Bank. If the County became unable to pay its obligations to the trustee, the bank's remedy would be to enforce its liens upon the funds obtained from the parking station.

Tax dollars would not be utilized to pay for these bonds, in that the County has already complied with the bond requirements and accumulated all necessary funds to fully pay all outstanding principal and interest on the bonds at scheduled maturity.

Finally, article 2372d–4, section 8, the enabling statute which allows the County to issue bonds to construct coliseums and auditoriums, states that the bonds shall contain the following provision: "The holder hereof shall never have the right to demand payment thereof out of money raised or to be raised by taxation." TEX. REV.CIV.STAT.ANN. art. 2372d–4, sec. 8 (Vernon 1971).

■ Appellee has not shown damages special to himself, or any damages at all. We hold that after weighing both the evidence favorable to the trial court findings, and then all of the evidence, appellee has no standing, either public or private, to contest the lease with regard to the special revenue bonds and the parking facility.

Appellant's first, second and third points of error are overruled in part as they pertain to appellee's public standing to raise noncompliance with the Open Meetings Act. With respect to the revenue bonds outstanding, these points of error are sustained and we find the trial court erred in entering a permanent injunction.

Appellant's thirty-second and thirty-third points of error pertain to the factual sufficiency of the Commissioners' compliance with the bond requirements. For the reasons stated above, these points of error need not be addressed.

## ATTORNEYS' FEES

Appellant's final three points of error allege that the trial court abused its discretion in awarding attorneys' fees against the City in that the award was not equitable and just and was in excess of a reasonable and necessary amount.

Appellee petitioned the trial court pursuant to the Uniform Declaratory Judgments Act for reasonable attorneys' fees. *See* TEX.CIV.PRAC. & REM.CODE ANN. sec. 37.009 (Vernon 1986). The court awarded Ken Groves attorneys' fees in the amount of $35,000; $20,000 for appeal to the Court of Appeals; $10,000 for application for writ of error to the Supreme Court of Texas; and $5,000 in the event that writ of error is granted.

Section 37.009 of the Declaratory Judgments Act provides "in any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* The grant or denial of attorney's fees lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing that it abused its discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *see also Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (1959).

In determining whether a particular award for attorney's fees is excessive, the reviewing court may draw on common knowledge of the justices of the court and their experience as lawyers and judges. *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 828 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). The court is further obligated to look at the entire record and to view the matter in light of the testimony, the amount in controversy and the nature of the case in making its ruling. *Southland Life Ins. Co. v. Norton*, 5 S.W.2d 767, 769 (Tex.Comm'n App. 1928, holding approved); *Commonwealth Lloyd's Ins. Co. v. Thomas*, 678 S.W.2d 278, 284–85 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

Factors to be considered by the fact finder in determining the reasonableness of the award of attorneys' fees include: 1) the time and labor involved; 2) the nature and complexities of the case; 3) the amount of money or the value of the property or interest involved; 4) the extent of the responsibilities assumed by the attorney; 5) whether other employment is lost by the attorney because of the undertaking; 6) the benefits resulting to the client from the services; 7) the contingency or certainty of compensation; and 8) whether the employment is casual or for an established or constant client. *See Braswell v. Braswell*, 476 S.W.2d 444, 446 (Tex.Civ.App.—Waco 1972, writ dism'd); *see also Morgan v. Morgan*, 657 S.W.2d 484, 491–92 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd).

The reasonableness of attorney's fees must be supported by competent evidence. *Great American Reserve Insurance Co. v. Britton*, 406 S.W.2d 901, 907 (Tex.1966). In deciding the reasonable value of attorney's services, the finder of fact may consider facts before it in relation to services rendered, as well as estimates of their value by attorneys who testified in court. *Gulf Paving Co., v. Lofstedt*, 188 S.W.2d 155, 160 (Tex.1945).

Ned Webster testified that, as counsel for appellee through January 4, 1987, his firm had expended 348 hours and 42 minutes on all pre-trial matters relating to the case at bar; his regular fee was $150 per hour, but included in his charges were paralegal services; he reduced his hourly rate to $105. He testified that the total value of these services is $36,613.60. Webster estimated eight hours of trial time at $125 per hour for Marsha Wise's services, appellee's other attorney. Webster and Ann Soward donated their time at trial free of charge. Webster further estimated an additional twenty hours of post-verdict work at $125 per hour equalling $2,500. Total attorneys' fees for representing appellee prior to appeal are $42,157.80, with appellee requesting $40,000. Webster testified that these fees derived from trial preparation, conferences, and correspondence. $10,000 was estimated as necessary for appeal to the Court of Appeals, with $5,000 needed should an application for writ of error be filed with the Supreme Court of Texas, and an additional $5,000 if such writ is granted.

Testimony showed that appellant's three attorneys requested fees for 150 hours, at $125 per hour, with the same estimate of fees as appellee's attorneys, for purposes of appeal.

The lease agreement in question was approved by the Commissioners' Court on May 12, 1986, and by the City on May 13, 1986. Additional amendments were incorporated, and the final draft was approved on August 25, 1986. Ken Groves originally filed this case in district court on November 24, 1986, with trial commencing on January 5, 1987. Appellee requested $60,000 in attorneys' fees for work performed prior to trial.

The case involved alleged violations of four statutes and three constitutional provisions, with appellee's allegations being based on his fifth amended original petition. The value of the property, that of all outstanding bond indebtedness, is $8,250,000.

We find that the trial court, in awarding attorneys' fees to appellee did not abuse its discretion. Appellant's thirty-fourth, thirty-fifth and thirty-sixth points of error are overruled.

We therefore sustain appellant's points of error two, three and ten through thirty-one, overrule appellant's points four through nine, and thirty-four through thirty-six, and sustain in part and overrule in part appellant's point of error one.

We affirm the trial court's judgment that the lease between Tarrant County and the City of Fort Worth is void for non-compliance with TEX.REV.CIV.STAT.ANN. art. 6252–17; we further affirm the award of attorneys' fees and costs. The grant of a permanent injunction by the trial court is set aside, and judgment is rendered that appellee take nothing in this regard.

The judgment is affirmed in part, and reversed and rendered in part.

KELTNER, J., files a dissenting opinion in which FARRIS, J., joins.

KELTNER, Justice, dissenting.

I respectfully dissent. Specifically, I disagree with the majority's holding that there is ample evidence to support the trial court's finding of fact that notice of the meeting did not meet the requirements of the Texas Open Meetings Act.[1]

Our Supreme Court has recently held that section 3A(h) of the Open Meetings Act requires that governmental entities must literally comply with the notice procedures of the Act. *Smith County v. Thornton*, 726 S.W.2d 2, 3 (Tex.1986). In reaching this decision, the Supreme Court relied heavily upon the Court of Appeals's decision which analyzed the legislative history of section 3A(h). *Thornton v. Smith County*, 690 S.W.2d 949 (Tex.App.—Tyler 1985), *aff'd in part, rev'd in part*, 726 S.W.2d 2 (Tex.1986). The Supreme Court's opinion overrules several Courts of Appeals' decisions holding that only substantial compliance with the notice procedures is required by the Act.[2]

To comply with the Act, county government must take five steps to give notice:

1. Post a written notice (of date, time, place and subject matter of the meeting);

2. On a bulletin board (at a convenient place);

3. In the county courthouse;

4. At a place readily accessible to the public at all times; and

5. For at least 72 hours preceding the meeting.

TEX.REV.CIV.STAT.ANN. art. 6252–17, sec. 3A(a), (d), and (h) (Vernon Supp.1988).

All the parties agree that written notice was posted on a bulletin board in the Tarrant County Courthouse at least 72 hours prior to the meeting. However, the parties disagree whether the notice was "readily accessible" as required by section 3A(h) of the Act.

The record before us contains the testimony of six witnesses on the issue of notice under the Act.

Two witnesses, both county employees, testified that the meeting notice was typed and duplicates posted at two locations at least 72 hours prior to the Commissioners'

---

1. TEX.REV.CIV.STAT.ANN. art. 6252–17, sec. 3A (Vernon Supp.1988). I cite the 1988 Supplement. However, at the time this case was tried, the trial court had before it a Vernon's Statute pocket part with an earlier date. The content of that supplement was identical to the wording of the notice provisions of the statute cited.

At the time the case was tried, section 3 had not been amended to provide that any act of a governmental entity in violation of the Act was voidable. *See* TEX.REV.CIV.STAT.ANN. art. 6252–17, sec. 3(a) (Vernon Supp.1988).

2. *River Road Neighborhood v. South Texas Sports*, 720 S.W.2d 551, 555 (Tex.App.—San Antonio 1986, writ dism'd); *McConnell v. Alamo Heights Ind. Sch. Dist.*, 576 S.W.2d 470, 474 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r. e.); *Stelzer v. Huddleston*, 526 S.W.2d 710, 713 (Tex.Civ.App.—Tyler 1975, writ dism'd); *Lipscomb Ind. School Dist. v. County School Trustees*, 498 S.W.2d 364, 366 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.).

Court meeting. One copy was posted in the County Administration Building, where the Commissioners' Court is located, and the other was posted on a bulletin board in the Tarrant County Courthouse. This testimony is uncontroverted.

Ken Groves, the appellee, testified that on advice of counsel, he checked the accessibility to the two posting places almost two months after the action of the Commissioners' Court of which he complains. Groves attempted to check the two posting places at 10:30 p.m. on a Sunday night in December.

Groves testified that he attempted to enter the courthouse building through the main doors on the south side of the building, but that the doors were locked. He admitted that he did not check any other of the eight entrances to the courthouse. (Groves acknowledged that he was well acquainted with the courthouse because he often had business there as a result of his work as a surveyor.) Instead, he proceeded to the County Administration Building across the street. The door to that building was unlocked. Groves confronted a deputy sheriff who told him that the building was closed.[3] Groves did not tell the deputy that his purpose was to view the public notices. Instead, he merely asked to walk around the five-story building. The deputy responded that the building was closed, but would reopen in the morning.

Neither Groves nor any other witness testified that the notice posted on August 21, 1986 was not posted at a place readily accessible to the public for 72 hours before the August 25, 1986 meeting.

James McCreight, Director of Tarrant County Services, testified concerning the accessibility of the courthouse to citizens. His testimony does not conflict with that of Groves. McCreight testified that there are between six and seven entrances to the courthouse. The courthouse actually consists of two buildings, known as the "old

courthouse" and the "civil courts" building. These buildings are connected by a two-story closed-in walkway that connects the ground floor of the Civil Courts Building with both the ground floor and basement of the old courthouse.

All doors to the courthouse are open from 7:00 a.m. until 6:00 p.m. Between the hours of 6:00 p.m. and 7:00 a.m. on weekdays and all day Saturday and Sunday, all doors except the north door to the walkway area are locked for security reasons. McCreight testified that the security reasons for locking the courthouse included protection of vital government records, safety of county personnel who worked during the evening, and safety of citizens who entered the courthouse to view posted notices.

During the evenings and weekends, a deputy sheriff occupies a guard station which is located in the walkway area. The deputy provides security and allows citizens with business at the courthouse in and out of the two buildings. While only the north door to the walkway is unlocked, this entrance is the most accessible to the building and to the bulletin board where public records are posted.

Once inside the building, the notices are at a convenient place as they are in a basement hallway. A citizen seeking access to the notices is not forced to walk through any county departments or doors. Instead, the citizen need only walk down a hallway directly to the bulletin board between 75 and 80 feet away from the entrance.

McCreight testified that the security of the courthouse is left to the Sheriff's Department. During the evenings and weekends, the north door remains unlocked unless the deputy on security duty is making rounds. During these brief intervals, the door is locked. A citizen seeking entry may utilize a button that activates a loud bell which alerts the deputy. This "night

---

3. At one point in the record, Groves testified the deputy told him that the courthouse was closed. However, he later clarified his testimony to re-flect that the deputy told him that the Administration Building rather than the courthouse was closed.

bell" is clearly identified by a sign at the north entrance to the walkway, which instructs visitors to ring a second time if no one appears within five minutes. Additionally, the night bell is loud enough to be heard throughout the building. When the deputy hears the bell, he or she immediately returns to the entrance. At most, there is between a five and ten minute wait.

Johnny Prince, Captain of the Patrol Division of the Tarrant County Sheriff's Department, also testified. His testimony does not conflict with that of Groves or McCreight. For the most part, Captain Prince's testimony confirms the testimony of McCreight. However, Prince further testified that in October of 1985, some nine months before the posting of which Groves complains, he sent out a memo to all deputies on security duty. The memo dealt with, "After Hours and week-end viewing of public Notices." The directory part of that memo stated:

> Effective this date you are to allow anyone wishing to view posted public notices entry to your assigned areas after hours and on week-ends. Continue to maintain necessary security when doing so by accompanying them if they should otherwise be out of your view.[4]

Captain Prince also testified that any person coming after hours or on weekends is required to "state their business" before being allowed access. The guard does have discretion to turn away a citizen who the guard does not believe wants access to the building for purposes of looking at the notices. If the guard has doubt, he is to contact his supervisor for further instructions.

The sixth witness was Deputy Sheriff Ray Murray, Jr. Deputy Murray's testimony does not conflict with that of Groves or McCreight, and is slightly different from Prince's testimony on only one ground.[5] Murray is assigned to security duty. Deputy Murray testified that he was aware of the October, 1985 memo and that it was posted in the guard shack. He stated that any person wanting to view the notice on the bulletin board was allowed entrance. Deputy Murray further testified that if a citizen acted suspicious in requesting alleged access to the bulletin board, he would contact his supervisor to determine what to do.

No witness testified that any citizen wishing to view the public notices was ever denied access to the courthouse.

After hearing this evidence, the trial judge entered two findings of fact which are attacked by the appellee, City of Fort Worth. Specifically, findings of fact six and seven state:

6. The bulletin board in the basement of the Tarrant County Courthouse and the fifth floor of the Tarrant County Administration Building were not places readily accessible to the general public at all times on the dates August 21, August 22, August 23, August 24, and August 25, 1986.

7. The public notice of the agenda for the Commissioners' Court meeting of Monday August 25, 1986 was not posted in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting.

The appellee, City of Fort Worth, attacks both findings of fact. The City's attack is on the ground there is no evidence, or factually insufficient evidence, to support the findings and that the findings are

---

4. In most instances, a person viewing the public notices would not be out of view of the guard's station, as the guard's station is located between 75 and 80 feet down the hallway from the bulletin board.

5. Captain Prince testified that he was not aware of any occasion in which a deputy could not return fast enough from his rounds to let a citizen wanting entry to enter the building.

However, Deputy Murray testified that in one instance, he returned to the north walkway door after hearing the bell and saw the citizen who evidently rang the bell walk around the corner. There is no indication in the record as to the date of the occurrence or the identity of the citizen involved.

against the great weight and preponderance of the evidence.

In determining a "no evidence" point, we are to consider only the evidence and inferences which tend to support the trial court's finding and disregard all evidence and inferences to the contrary. *See Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *In Re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the trial court's finding, the point must be overruled and the finding upheld. On the other hand, in reviewing a point of error which claims there is insufficient evidence to support the finding, we are required to consider all the evidence in the case. *See In Re King's Estate*, 244 S.W.2d at 661–62. In this regard, we do not have the power to make findings of fact, but only to "unfind" facts that are not supported by evidence. *See Bellefonte Underwriters Ins. Co. v. Brown*, 704 S.W.2d 742, 744–45 (Tex.1986).

Most importantly we cannot substitute our finding for that of the fact finder. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986). However, it is our duty to overturn judgments which are not based on evidence, or are based on insufficient evidence.

It is my opinion that there is little and certainly insufficient evidence to support the trial court's sixth and seventh findings of fact. In considering all the evidence, I believe the evidence in favor of the finding is so weak and the evidence contrary to the finding is so overwhelming that the finding should be set aside. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

There are only three passages of evidence that tend to support the trial court's finding.[6] The first is Ken Groves's statement that the "front door" of the courthouse was locked at 10:30 p.m. on December 14, 1986. The second is Deputy Murray's statement that on one occasion, he did not arrive back from his rounds in time to admit an unknown citizen seeking entry to the courthouse for unknown reasons. The third is the testimony of McCreight, Captain Prince and Deputy Murray to the effect that all doors save one were locked during weeknights and weekends.

The remainder of the evidence established that any citizen seeking access to the legislatively mandated place for posting (the courthouse) could obtain access upon reasonable investigation and inquiry. Specifically, the uncontroverted testimony was that one door of the courthouse remained unlocked, except for brief periods of time. During these periods a "night bell" was available for use.

Additionally, the deputy(ies) on security duty were instructed to admit persons seeking to view the posted notice and did so. There is no evidence that any citizen was prevented (by delay, inconvenience or lack of access) from viewing the notices at the courthouse at any time.[7] Furthermore, there is no evidence that any citizen was denied ready access to the notice of the meeting which Groves complains.

However, Groves argues that the facts of a recent Supreme Court case are almost identical to the facts in the instant case. *See Thornton v. Smith County*, 690 S.W.2d 949, 951 (Tex.App.—Tyler 1985),

6. Arguably there is one other source of evidence. At page 30 of the Statement of Facts for the December 19, 1986 hearing, the trial judge announces that he "will take judicial knowledge also of how people get in and out of the Courthouse at nights and weekends." The trial court was not asked to take judicial knowledge by any of the parties, and the court did not state of what facts he intended to take judicial knowledge. *See* TEX.R.CIV.EVID. 201.

Since the matter of public ingress and egress to the courthouse was the chief issue of dispute, the trial court should have stated the facts of which he took knowledge. As a result, I do not consider the trial court's announcement as any evidence tending to support or reject the finding. To hold otherwise would destroy the concept of appellate review of evidence points, which requires appellate courts to analyze specific items of evidence.

7. In both findings six and seven, the trial court found that the posting outside the Commissioners' Court in the County Administration Building was not a posting that was "readily accessible" to the public.

*aff'd in part, rev'd in part,* 726 S.W.2d 2 (Tex.1986). I disagree. The facts are similar, but there are crucial differences.

In *Thornton,* citizens attacked an action by Commissioners' Court on the same grounds argued in this case. The notice of the meeting was posted on the first floor of the courthouse on Friday for a meeting on Monday. The evidence demonstrated that all first floor entrances to the courthouse were locked on the weekends. As a result the only entrance was through the Sheriff's Department located a floor below in the basement.

Significantly, the Smith County Judge testified that entrance through the Sheriff's Department was limited. He further testified that the *only time* access to the bulletin board was "readily accessible and easily accessible in the manner in which a person would have a right to expect to walk in and see a public notice" was during the weekdays before 8:30 p.m. and not during weekends. *Thornton,* 690 S.W.2d at 951.

The testimony by the Smith County Judge was clearly ample to support a finding that the notice was not readily accessible.[8] However, the evidence in the instant case is far less and falls below the sufficiency of evidence to support a finding.

In my opinion, the term "readily accessible" does not mean immediate access or access without mild inconvenience. The word "readily" is defined variously in *Webster's Third New International Dictionary* as "with fairly quick efficiency"; "reasonably fast"; "with a fair degree of ease"; and "without much difficulty." These terms define the process adopted for

access to the public postings in the instant case.

In my opinion all citizens have a right to view public postings at any time and to complain if they are denied that right. However, with every right comes an obligation to use due diligence to exercise the right. In other words a citizen may have to suffer small inconveniences to exercise his or her rights under the law.[9]

Upon these facts and for these reasons, I dissent from the majority's ruling and judgment.

FARRIS, J., joins.

---

8. The trial court found that the evidence did support a finding that Smith County had "substantially complied" with the notice provision. The Court of Appeals and Supreme Court found literal compliance rather than substantial compliance is the test.

9. These inconveniences are slight when measured against the major inconvenience which might be caused to the public by a citizen who does not thoroughly pursue access to notices posted pursuant to the Act. The Act currently provides that any governmental action taken in violation of the Act is voidable. TEX.REV.CIV. STAT.ANN. art. 6252-17, sec. 3(a) (Vernon Supp.1988).

As a result, a citizen may attack acts of a governmental entity on the grounds of notice years after their enactment. In such cases it is unreasonable to suggest that a citizen who did not diligently pursue his right may seek to overturn the action on notice grounds.