CITY OF WICHITA FALLS, Appellant,

v.

KEMP PUBLIC LIBRARY BOARD OF
TRUSTEES et al., Appellees.

No. 18171.

Court of Civil Appeals of Texas,
Fort Worth.

Jan. 17, 1980.

Rehearing Denied Feb. 14, 1980.

H. P. Hodge, City Atty., Wichita Falls, for appellant.

Fillmore, Lambert, Farabee, Purtle & Lee, and Roger Lee, Wichita Falls, for appellees.

## OPINION

HUGHES, Justice.

The Board of Trustees of the Kemp Public Library brought a declaratory action to determine the status of their relationship with the defendant City of Wichita Falls. Resolution of the dispute required the construction of city charter provisions and ordinances which dealt with taxation and with city personnel policies. The city has appealed the declaratory judgment ordered by the trial court.

We reverse and remand.

Over sixty years ago J. A. Kemp established a public library for the City of Wichita Falls. Kemp donated money to the city to build a library building on land which was a city park. In addition to constructing the building, Kemp also donated most of the initial collection of books in the library.

Desiring to insulate the library from city politics, Kemp attempted to condition his gift on the requirement that the library be run by an independent board of trustees and that the city provide continued financial support for the operation of the library. In 1927, the city passed an ordinance and a year later the voters adopted a city charter amendment. From evidence adduced in the instant suit, it appears the ordinance was an expression of the parties' understanding about the relationship of the library board to the city and the rights and responsibilities of each. The charter amendment provided a specific tax for the library.

Tax revenues collected under the city charter were maintained in a separate library fund before 1953. Between 1953 and 1976, the library tax revenues gradually became commingled with other city funds. The library did not normally spend all of the money raised as a result of the tax and the library board set this money aside for contingencies. In 1976, the City Manager ruled that all excess revenue from taxes would no longer be credited to the specific fund for which it has been raised, but go into a general fund to offset deficits elsewhere in the city budget.

Before these changes the library board had operated fairly amicably with the city. However, as a result of the changes, a number of disputes arose. These disputes fall into two general categories. The first of these concerns whether the board or the city would manage the library and make executive decisions regarding its operation, particularly in reference to employment policies. The second area of the dispute concerns funding. To resolve these disputes the board filed this action.

In their suit, the board sought recognition of a charitable trust relationship between it and the city and a judicial determination of the terms of the trust. In essence, the court found that (1) the Kemp Public Library constituted a charitable trust; (2) certain conditions on the part of the city were to be performed, *particularly* that the city should provide continued financial support of the library; and (3) the city must

hold all amounts collected from tax levies for library purposes in trust exclusively for the library and account to the board from time to time for these funds.

In its first point of error, the city argues no trust exists. We agree. The only kind of trust which could have been created under these circumstances would have been an express charitable trust. Neither a resulting trust nor a constructive trust is applicable under the facts of this case. The evidence does not show that such an express trust was established. While it is preferable to have a trust instrument in writing to create a trust, such a written document is not necessary if other formalities are present at the time of creation of the trust.

One of the basic formalities required to create an express trust is the stated intention of the testator. *Kurtz v. Robinson*, 279 S.W.2d 949 (Tex.Civ.App.—Amarillo 1955, writ ref'd n. r. e.). A declaration of trust must be reasonably certain in its material terms. This includes identification of the property covered by the trust, the beneficiaries or persons in whose behalf the trust is created and the manner in which the trust is to be performed. If any of these elements are vague, general or equivocal, the trust will fail for want of certainty. *Rich v. Witherspoon*, 208 S.W.2d 674 (Tex.Civ.App.—Dallas 1948, no writ). Kemp did not clearly state his intention in this regard. We find no such express declaration attributed to him in the record, nor do we construe any of his activities in the establishment of the library as indicating any such express intent on his part. Indeed, his actions fall far short of approaching the threshold necessary to impute an expression of intent to him.

Witnesses recall Kemp to have stated he wanted to create a library, which would be under the control of an independent board while maintained and operated by the City. This is hearsay, and we cannot consider it. When Kemp's actions are taken into consideration, it would appear that he did not intend to establish a trust.

Kemp assisted in the drafting of the 1927 ordinance. One of the conditions of his gift which was incorporated into the ordinance was the requirement of the city's continued support of the library. Near the time the city adopted this ordinance, the city hired the librarian and set her salary and vacation time. The city also established a library fund during an open city council meeting which Kemp attended. If Kemp wanted to establish a trust, he had ample opportunity to express that intent. His actions alone do not lead to the necessary conclusion that he intended to establish a trust. Conditioning a gift on continued financial support is not enough to impute to a person the intent to create a trust.

Concerning the management prerogatives of the city and the board, the city argues in point of error four that provisions made in the above ordinance for the power of the board to hire, fire and set employment policy for library employees is in violation of the city charter. The Wichita City Charter, as it existed in 1927, provided that the power to hire and fire employees rested with the City Manager, or if no City Manager had been appointed, then such power rested with the city's Board of Aldermen. Other charter provisions stated that, with the exception of the City Attorney, the city's accountant, and the City Clerk, the Board of Aldermen could not dictate the appointment of persons for city employment if a City Manager existed and that, with the exception of instances of a formal inquiry, the Board of Aldermen could only deal with city employees through the City Manager.

These charter provisions are in conflict with the 1927 ordinance which governs the operation of the library. This is the ordinance which memorialized the understanding of Kemp and the city regarding the relationship of the board with the city. By allowing the board, an independent and autonomous body, to run the affairs of the library with respect to personnel, the net effect of the operation would be to circumvent the City Manager, if and when one was appointed. Evidence introduced in the

trial below shows that a City Manager now exists and, as a result, all day to day personnel decisions regarding the library must be made by the City Manager. Any attempt by the board to act on its own would violate the city charter.

In regard to the second problem area, that of the library's finances, the city argues in point of error five that the existing method of funding for the library is unconstitutional. The Texas Constitution, Art. 11, § 5, provides that no debt can be created by any home rule city unless the city, at the time the debt is created, provides for the assessment and collection, on an annual basis, of a sufficient sum of money to pay the interest on the indebtedness created, and in addition, that the city create a sinking fund of at least two percent of the indebtedness.[1]

The Texas Supreme Court has stated that Art. 11, § 5 was intended as a restraint upon the power of a municipal corporation to contract and create debts by so doing. The intent of the provision was to insure that payment of all obligations of a municipality be provided for out of current revenues or through the reservation of sufficient funds, obtained through the creation and use of a sinking fund, to ultimately retire the principal amount of the debt. *McNeill v. City of Waco*, 89 Tex. 83, 33 S.W. 322 (1895).

In that same case, the Supreme Court held that any obligation binding the city to pay for any matter relating to its ordinary expenses which was not intended to be made out of current funds of the year in which the expenditure was made was a debt as that word was used in Art. 11, § 5. Under this definition, the obligation which the city undertook to run the library when it accepted the building from Kemp was such an obligation falling within the meaning of "debt". The city undertook a matter which related to its ordinary expenses which might not be paid out of current revenues. The city failed to create a sink-

ing fund and an appropriate means to collect funds for *such a fund*, thus rendering the operation of the library by the city to be an unprovided for debt. This is constitutionally impermissible.

Based on the foregoing, we hold that legal relationship between the City of Wichita Falls and the Kemp Public Library Board of Trustees, as decreed by the trial court, to be in violation of both the City Charter of Wichita Falls and the Texas Constitution. Accordingly, we reverse the judgment of the trial court and remand the cause for further proceedings to determine the legal relationship between the parties in light of our holdings. We have considered each of the several points of error raised. We do not feel that the points of error for which comment is omitted warrant discussion. However they have been considered and are overruled.

---

1. The city argues that Tex.Const. art. 11, § 7 also applies to the facts of this case. We question whether § 7 applies based on a construction of the language in that section. A determination of the applicability of § 7 is not necessary to the disposal of the instant case as it can be disposed of based solely on the provisions in § 5.