

# The Attorney General of Texas

November 2, 1983

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
'ston, TX. 77002-3111
.(223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Robert C. Lanier
Chairman
State Department of Highways
  and Public Transportation
Dewitt C. Greer State Highway Bldg.
11th and Brazos Streets
Austin, Texas    78701

Opinion No.  JM-84

Re:  Use by county of combina-
tion tax and revenue bonds to
construct toll roads

Dear Mr. Lanier:

You have requested our opinion regarding the authority of a county to use the proceeds of combination tax and revenue bonds to construct toll roads.

Article 6795b-1, V.T.C.S., authorizes Gulf Coast counties with a population of 50,000 or more to issue bonds to pay for the construction, operation and maintenance of causeways, bridges, tunnels, highways and turnpikes, including toll roads. You ask:

> Does the use of the proceeds of combination tax and revenue bonds to construct toll roads, turnpikes, causeways, or bridges constitute an unconstitutional lending of credit or grant of public money when a user is charged a toll for the use of the facility?

Article III, section 52 of the Texas Constitution provides:

> (a) Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company.

> (b) Under Legislative provision, any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the State, or any defined district now or hereafter to be described and defined

within the State of Texas, and which may or may not include, towns, villages or municipal corporations, upon a vote of two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to wit:

(1) The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof, or irrigation thereof, or in aid of such purposes.

(2) The construction and maintenance of pools, lakes, reservoirs, dams, canals, and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof.

(3) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof.

(c) Notwithstanding the provisions of Subsection (b) of this Section, bonds may be issued by any county in an amount not to exceed one-fourth of the assessed valuation of the real property in the county, for the construction, maintenance, and operation of macadamized, graveled, or paved roads and turnpikes, or in aid thereof, upon a vote of a majority of the resident property taxpayers voting thereon who are qualified electors of the county, and without the necessity of further or amendatory legislation. The county may levy and collect taxes to pay the interest on the bonds as it becomes due and to provide a sinking fund for redemption of the bonds.

Article III, section 52 clearly authorizes a county, pursuant to statute, to issue bonds for the construction, operation and

maintenance of turnpikes.  In our opinion, that the county will charge a toll for the use of a turnpike pursuant to legislative authority is not in itself a constitutional impediment to the construction of the road.  We must also determine, however, whether the use of combination tax and revenue bonds to finance the projects raises any constitutional objection.

Article III, section 52 clearly contemplates the use of the proceeds of tax bonds to finance the building of turnpikes.  The use of public funds is constitutionally permissible so long as the expenditure serves "the direct accomplishment of a legitimate public . . . purpose."  Barrington v. Cokinos, 338 S.W.2d 133, 140 (Tex. 1960); see Letter Advisory No. 9 (1973).  We believe there can be no doubt that the construction of a county toll road can serve a legitimate public purpose.  We conclude, therefore, that the use of bond proceeds to finance toll roads does not necessarily constitute an unconstitutional lending of credit under article III, section 52 of the Texas Constitution.  Cf. Tex. Const. art. III, §52-b.

However, revenue bonds and tax bonds are not the same thing.  When public bodies sell revenue bonds, they borrow against the future revenues they expect to receive rather than the future taxes they expect to collect.  Texsan Service Co. v. City of Nixon, 158 S.W.2d 88 (Tex. Civ. App. - San Antonio 1941, writ ref'd).  Unlike tax bonds, revenue bonds are said not to create public debt in the constitutional sense because they do not legally obligate the tax base when they are to be paid solely from revenues.  Texas Turnpike Authority v. Shepperd, 279 S.W.2d 302 (Tex. 1955).  Bonds not secured solely by revenues have a different effect.

When bondholders are entitled not only to be paid from income generated by a facility, but also to insist that tax money, the proceeds from tax bonds, or other public property be used to generate that income, then the bonds are not payable "solely from revenues" in the sense in which courts have declared them to be not debt-producing.  See City of Dayton v. Allred, 68 S.W.2d 172 (Tex. Comm'n App. 1934, judgmt adopted).  Where a governmental unit agrees to pledge both ad valorem taxes and the revenues of a facility to the payment of bonds issued to construct such facility and to maintain and operate the facility with tax monies for as long as it takes to retire such bonds out of revenues of the facilities and the ad valorem taxes pledged thereto, then the tax base has been additionally obligated to the extent of the bond amount to be retired.  See City of Wichita Falls v. Kemp Public Library Board of Trustees, 593 S.W.2d 834 (Tex. Civ. App. - Fort Worth 1980, writ ref'd n.r.e.); Attorney General Opinion MW-337 (1981).

You advise that the voters of Harris County, pursuant to article 6795b-1, V.T.C.S., recently authorized the issuance of bonds to construct and operate a toll road -- bonds not yet submitted to this office for approval.  (Under section 2 of article 6745b-1 submission

of bonds is permissive).  In such circumstances we cannot pass upon the validity of the particular bonds, but assuming full compliance with constitutional and statutory requirements respecting the issuance of debt-creating securities for tax and "revenue" bonds wholly or partially secured by guarantees impacting the tax base or other public assets, we do not believe the use by counties of proceeds from combination tax and revenue bonds for the construction of toll roads is violative of article III, section 52 of the Texas Constitution.

## S U M M A R Y

Assuming full compliance with constitutional and statutory requirements respecting the issuance of debt-creating securities for tax and "revenue" bonds wholly or partially secured by guarantees impacting the tax base or other public assets, the use by counties of proceeds from combination tax and revenue bonds for the construction of toll roads is not violative of article III, section 52 of the Texas Constitution.

Very truly yours,

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
David Brooks
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton