OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS

November 26, 2002

The Honorable Russell W. Malm                    Opinion No. JC-0582
Midland County Attorney
200 West Wall Street, Suite 104                  Re: Whether a lease agreement between
Midland, Texas 79701                             Midland County and a museum violates
                                                 limitations on the use of public funds in article
                                                 III, section 52 and restrictions on public debt in
                                                 article XI, section 7 of the Texas Constitution,
                                                 and related questions  (RQ-0543-JC)

Dear Mr. Malm:

You ask a number of questions about the validity of a lease agreement between Midland County (the "County") and the Museum of the Southwest (the "Museum").[1] We conclude that the County had the authority to acquire property for the purposes of operating a museum and was authorized to enter into the lease agreement with the Museum under chapter 319 of the Local Government Code and its statutory predecessor, former article 2372d of the Revised Civil Statutes. The commissioners court that entered into the lease agreement could have reasonably determined that the County's and Museum's respective obligations under the lease agreement comported with article III, section 52 of the Texas Constitution, which prohibits the expenditure of public funds for private purposes. On the other hand, the lease agreement violates the restrictions on public debt in article XI, section 7 of the Texas Constitution to the extent the agreement obligates the County to pay for the Museum's utilities and other expenses and to insure and maintain the building and grounds over a multi-year period without giving the County the right to terminate at the end of each year or to elect on a yearly basis whether or not to appropriate funds to satisfy its obligations under the lease. Because the terms of the lease agreement that obligate the County to pay for the Museum's utilities and other expenses and to insure and maintain the building and grounds are severable from the agreement's other terms, however, the remainder of the lease agreement is not void.

---

[1] *See* Letter from Honorable Russell W. Malm, Midland County Attorney, to Honorable John Cornyn, Texas Attorney General (May 7, 2002) (on file with Opinion Committee) [hereinafter Request Letter]; Museum of the Southwest, The Juliette and Fred Turner, Jr. Memorial Gallery information page (attachment to Request Letter) [hereinafter Turner Gallery]; Amended and Restated Lease Agreement (May 8, 1989) (attachment to Request Letter) [hereinafter Amended and Restated Lease Agreement]; Warranty Deed (July 10, 1968) (attachment to Request Letter) [hereinafter Warranty Deed dated July 10, 1968]; Warranty Deed (July 9, 1968) (attachment to Request Letter) [hereinafter Warranty Deed dated July 9, 1968].

You inform us that in 1968 Midland County "accepted a deed of real estate from the Museum . . . for the sole purpose of leasing the property back to the Museum for the operation of an art museum." Request Letter, *supra* note 1, at 1. The property consisted of the former Turner estate, which included the Turner mansion and grounds.[2] The original lease was for a period of ten years. *See* Request Letter, *supra* note 1, at 1. In 1978 the County and the Museum executed a renewal of the lease agreement for a ten-year term. *See id.* at 2. In 1985 the parties again renewed the lease agreement and provided that the lease would run until 1988 and, if the Museum completed an addition before a date certain in 1987, the lease would extend for fifty years from 1968. *See id.* In 1989 the parties executed an Amended and Restated Lease Agreement, which provided that the lease would be for a term of fifty years commencing on September 1, 1968. *See id.* Except where noted otherwise, this opinion will refer to the 1989 lease agreement, which is the lease agreement currently in effect.

The lease agreement obligates the County to insure the buildings and structures located on the premises; to maintain the exterior structural condition of the buildings, including the foundations, walls, roofs, and doors; and to maintain "the grounds and landscaping at the leased premises in accordance with the standards and dignity befitting a museum and local ordinances as they may apply." Amended and Restated Lease Agreement, *supra* note 1, ¶¶ 3, 5. The County is also required to bear the cost of utilities (except telephone) and to service and maintain the heating, air conditioning, and plumbing systems. *See id.* ¶ 6. You state that in fiscal year 2000 the County paid approximately $64,000 to meet its obligations under the lease. *See* Request Letter, *supra* note 1, at 2. The lease agreement does not require the Museum to make lease payments other than an initial $1.00 payment, but it does require the Museum to operate the leased premises as a museum, to maintain the interior of the buildings, and to pay for the cost of telephone services. *See* Amended and Restated Lease Agreement, *supra* note 1, ¶¶ 1, 4.

We understand that the Museum is a private, non-profit corporation governed by a board of trustees. In addition to leasing and managing the property at issue, the Museum has constructed a planetarium on adjacent land owned by the City of Midland and a children's museum on adjacent land owned by the Museum. *See* Museum Brief, *supra* note 2, at 3. The principal building on the property at issue, the Juliette and Fred Turner Jr. Memorial Gallery, contains permanent exhibits of American art, with an emphasis on the Southwest, as well as temporary exhibits. *See* Turner Gallery, *supra* note 1.

You ask a number of questions about the lease agreement's validity under the Texas Constitution, such as whether the lease agreement is consistent with article III, section 52, which limits the expenditure of public funds, and article XI, section 7, which limits a county's authority to incur debt. Given counties' limited jurisdiction, however, we need not reach these constitutional issues if the County lacked an affirmative grant of express or implied authority to enter into the lease agreement. *See* Tex. Att'y Gen. Op. Nos. JC-0439 (2001) at 2 ("A county commissioners court may

---

[2]*See* Brief, Museum of the Southwest, from Leonard B. Smith, Attorney at Law, to Susan Denmon Gusky, Chair, Opinion Committee, Office of the Attorney General (July 3, 2002) (on file with Opinion Committee) [hereinafter Museum Brief].

exercise only those powers that the state constitution and statutes confer upon it, either explicitly or implicitly."); JC-0171 (2000) at 1 ("It is well settled that the authority of the commissioners court to contract [o]n behalf of the county is limited to that conferred either expressly or by necessary implication by the constitution and laws of this state."). Therefore, before addressing your constitutional questions, we address your questions regarding the County's statutory authority to enter into the lease agreement.

You ask whether a county "has legal authority to acquire property for the purposes of operating an art museum or contracting with a private organization to do so." Request Letter, *supra* note 1, at 5. We conclude that a county has the legal authority to do so. A county is generally authorized by section 270.001 of the Local Government Code to acquire real property by deed. *See* TEX. LOC. GOV'T CODE ANN. § 270.001 (Vernon 1999) ("A deed, grant, or conveyance that is made, is acknowledged or proven, and is recorded as other deeds of conveyance to a county, to the courts or commissioners of a county, or to another person for the use and benefit of a county vests in the county the right, title, interest, and estate that the grantor had in the property at the time the instrument was executed and that the grantor intended to convey."); TEX. REV. CIV. STAT. ANN. art. 1576 (Vernon 1962 & Supp. 2002) (statutory predecessor to Local Government Code section 270.001) (repealed). As discussed further below, a county is specifically authorized to acquire property for museum purposes by chapter 319 of the Local Government Code.

Chapter 319 of the Local Government Code authorizes a commissioners court to establish and maintain a museum. Section 319.001 authorizes the commissioners court of a county to "provide for annual exhibits of horticultural, agricultural, livestock, mineral, and other products that are of interest to the community." TEX. LOC. GOV'T CODE ANN. § 319.001 (Vernon 1999); *see also* TEX. GOV'T CODE ANN. §§ 1473.021-.024 (Vernon 2000) (county authority to purchase or construct building to be used for coliseum, auditorium, or annual exhibit of livestock or agricultural, horticultural, or mineral products of the county; to issue bonds to finance such purchase or construction; and to impose a tax to pay the bonds). Pursuant to section 319.002, "[t]o aid in the exhibition of products listed in Section 319.001," a commissioners court "may establish and maintain a *museum*, building, or other improvement in the county or at any other location in the United States at which a fair or exposition is being held." TEX. LOC. GOV'T CODE ANN. § 319.002 (Vernon 1999) (emphasis added).

Opinions of this office addressing sections 319.001 and 319.002's statutory predecessor construed the grant of authority in what is now section 319.002 broadly to permit a county to establish and maintain a museum separate and apart from "annual exhibits of horticultural, agricultural, livestock, mineral, and other products" now provided for in section 319.001. *Id.* § 319.001; *see, e.g.,* Tex. Att'y Gen. Op. Nos. M-1113 (1972) at 2 (concluding that former article 2372d authorized county to pay portion of salary of manager of a pioneer museum); WW-371 (1958) at 3 (concluding that authority in former article 2372d to provide exhibits "is then broadened to include the additional powers pertaining to museums"); *see also* Tex. Att'y Gen. Op. No. C-656 (1966) at 2 (concluding that a "museum" is "a repository or collection of natural, scientific, or literary curiosities or objects of interest, or of works of art"). The language of sections 319.001 and 319.002 derives from former article 2372d of the Revised Civil Statutes, which was repealed and

codified in chapter 319 in 1987. *See* Act of May 1, 1987, 70th Leg., R.S., ch. 149, §§ 1 (adopting Local Government Code), 49 (repealing former article 2372d), 1987 Tex. Gen. Laws 707, 707, 1306.

This broad construction of the former law dates from 1958, *see* Tex. Att'y Gen. Op. No. WW-371 (1958) at 3, and there is no indication that the legislature sought to modify it in adopting the recodification of article 2372d in the Local Government Code. Former article 2372d authorized counties to "provide for annual exhibits of horticultural and agricultural products, livestock and mineral products, and such other products as are of interest to the community." Act of Nov. 9, 1934, 43d Leg., 4th C.S., ch. 20, § 1, 1934 Tex. Gen. Laws 52, 52; Act of Oct. 27, 1936, 44th Leg., 3d C.S., ch. 507, § 1, 1936 Tex. Gen. Laws 2103, 2103. It also provided that "[i]n connection therewith, such counties may also establish and maintain museums." Act of Nov. 9, 1934, § 1, 1934 Tex. Gen. Laws at 52. Although we believe that this language could have been construed more narrowly to limit counties to establishing museums only in connection with "annual exhibits of horticultural and agricultural products, livestock and mineral products, and such other products," the broader reading of the statute was supported by former article 2372d-3, which authorized a commissioners court to permit the use of article 2372d improvements "for any useful public purpose which, in the opinion of the Court, will be of benefit to the county and its citizens." Act of Mar. 29, 1951, 52d Leg., R.S., ch. 49, § 2, 1951 Tex. Gen. Laws 78, 78. Likewise, section 319.004 authorizes a commissioners court to permit the use of a building or improvement "for any public purpose the court determines to be of benefit to the county and its residents." TEX. LOC. GOV'T CODE ANN. § 319.004(d) (Vernon 1999 & Supp. 2002). Accordingly, we adhere to the longstanding interpretation.

Chapter 319 also authorizes a commissioners court to lease museum buildings and to contract for their management. Section 319.004 authorizes a commissioners court to "contract for the complete management of, and for the conducting, maintenance, use, and operation of, buildings, improvements, and exhibits authorized by this chapter." *Id.* § 319.004(a). The commissioners court "may lease the buildings, improvements, or exhibits," *id.* § 319.004(b), and "may permit the use of a building, improvement, or exhibit for any public purpose the court determines to be of benefit to the county and its residents," *id.* § 319.004(d). A contract or lease made under this section must be evidenced by an order of the commissioners court and entered in the minutes of the court. *See id.* § 319.004(c).

The lease agreement expressly provides that the leased premises shall be used for the purposes of

> maintaining a public museum . . . in accordance with the provisions of Articles 2372d and 2372d-3, Vernon's Annotated Civil Statutes (or any successor provision or provisions thereto), for the display of the products there specified and for such other displays, exhibits and endeavors as are of educational, cultural or intellectual interest to the citizens of Midland County, Texas.

Amended and Restated Lease Agreement, *supra* note 1, ¶ 1. The original lease agreement contained a similar term. *See* Lease Agreement ¶ 1 (Sept. 5, 1968) (attachment to Request Letter, *supra* note 1). Although the 1989 lease agreement, like the original 1968 lease agreement, refers to articles 2372d and 2372d-3, those provisions were repealed and codified in chapter 319 of the Local Government Code in 1987. Chapter 319 authorized the County to enter into the 1989 lease agreement. We assume that the lease agreement was evidenced by an order of the commissioners court and entered in the minutes of the court as required by section 319.004(c) of the Local Government Code.

With regard to the commissioners court's statutory authority to enter into the lease agreement, you also ask whether the lease would "be void or voidable if it was entered into without complying with the requirements of Chapter 263 of the Local Government Code." Request Letter, *supra* note 1, at 6. Chapter 263 provides competitive procedures that a county generally must follow to sell or lease county property. *See, e.g.*, TEX. LOC. GOV'T CODE ANN. §§ 263.001 (Vernon 1999) (sale or lease of county real property by public auction); 263.007 (Vernon 1999 & Supp. 2002) (sale or lease of county real property through sealed-bid or sealed-proposal procedure). This office has concluded, however, that the requirements of chapter 263 do not apply to a contract entered into under section 319.004 of the Local Government Code. *See* Tex. Att'y Gen. LO-98-057, at 2-3 ("[W]hen another statute authorizes the county to lease a specific kind of real property, the provisions of chapter 263 do not apply. . . . The county is not required to competitively bid a contract entered into pursuant to section 319.004."). Accordingly, a lease entered into under section 319.004 of the Local Government Code (or its predecessor) is not void or voidable if it was entered into without complying with chapter 263.

Given our conclusion that chapter 319 authorized the County to acquire the property for museum purposes and to enter into the lease agreement, we do not address your question about the County's authority under chapter 331 of the Local Government Code or your question about the effect of the 1968 conveyance of the property to the County if the County did not have authority to acquire the property. *See* Request Letter, *supra* note 1, at 4. We instead turn to your questions about the constitutional limitations on county authority.

You ask whether County expenditures for museum maintenance and other museum expenses pursuant to the lease agreement violate article III, section 52. *See* Request Letter, *supra* note 1, at 4. You are also concerned that the lease agreement may violate this provision because the lease agreement does not require the Museum to make lease payments to the County beyond the initial payment of $1.00. *See id.* We conclude that the commissioners court that entered into the lease agreement could have reasonably determined that the County and Museum's respective obligations under the lease agreement comported with article III, section 52.

With respect to the County's payments under the lease agreement, article III, section 52 bars a transfer of county funds to a private entity unless the transfer serves a public purpose of the county and the transfer is subject to adequate controls, contractual or otherwise, to ensure that the public purpose is accomplished. *See* Tex. Att'y Gen. Op. No. JC-0439 (2001) at 1. Article III, section 52 of the Constitution precludes the use of public funds for private purposes by counties, cities, and

other political subdivisions. *See* TEX. CONST. art. III, § 52 ("[T]he Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever, or to become a stockholder in such corporation, association or company."). Article III, section 51 contains a similar provision applicable to the legislature. *See id.* § 51. Article III, section 52 precludes counties from making unconditional gifts or donations to private entities—expenditures which, by definition, lack sufficient controls to ensure that an authorized public purpose is achieved. *See, e.g., Kordus v. City of Garland*, 561 S.W.2d 260, 261 & n.1 (Tex. Civ. App.–Tyler 1978, writ ref'd n.r.e.) (holding that taxpayer had standing to bring action against city to enjoin it from making donations to private corporation in violation of article III, section 52) (citing Tex. Att'y Gen. Op. No. H-397 (1974)); Tex. Att'y Gen. Op. No. JC-0113 (1999) at 2-3 (citing authority). In making an expenditure of county funds that benefits a private person or entity, however, a commissioners court will avoid violating article III, section 52 if it (i) determines in good faith that the expenditure serves a public purpose and (ii) places sufficient controls on the transaction, contractual or otherwise, to ensure that the public purpose is carried out. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0439 (2001) at 1, JC-0113 (1999) at 2, DM-256 (1993) at 2-3.

In 1989 when the County entered into the Amended and Restated Lease Agreement, a prior opinion of this office supported a commissioners court's determination that expending county funds to benefit a museum would serve a public purpose. *See* Tex. Att'y Gen. Op. No. MW-423 (1982) at 2 (concluding that Texas Historical Commission museum grants served a public purpose for purposes of article III, sections 51 and 52 because support of museums helps to educate the public about such subjects as history, economics, anthropology, and the fine arts). Furthermore, although the lease agreement between the County and the Museum could have given the County greater control over the Museum's performance of its contractual obligations, the lease agreement does require the Museum to operate the County's property as a museum. The lease agreement would appear to place sufficient controls on the transaction to ensure that the public purpose—the operation of a museum—is carried out. *See* Tex. Atty. Gen. Op. JC-0439 (2001) at 2 ("A contract that imposes on the nonprofit organization an obligation to perform a function that benefits the public may provide adequate control.") (citing *Key v. Comm'rs Ct. of Marion County*, 727 S.W.2d 667, 669 (Tex. App.–Texarkana 1987, no writ) (per curiam)).

You also assert that a lease of public property "for rental or lease payments at less than fair market value . . . would amount to [a] . . . gift or grant of public money" in violation of article III, section 52. Request Letter, *supra* note 1, at 4. Although courts and this office have concluded that the lease of public property to a private entity does not violate article III, section 52 where the transaction serves a public purpose and where an adequate rental is paid, *see Dodson v. Marshall*, 118 S.W.2d 621, 624 (Tex. Civ. App.–Waco 1938, writ dism'd); Tex. Atty. Gen. Op. Nos. JC-0179 (2002) at 4, H-445 (1974) at 4, H-109 (1973) at 5, article III, section 52 does not necessarily require a county to lease property for fair market value if the lease serves a public purpose. *See* Tex. Att'y Gen. Op. No. JM-1156 (1990) at 3 (article III, section 51 does not prohibit state from leasing space for child care facilities at a rate lower than fair market value if lease serves a public purpose). Again, chapter 263 of the Local Government Code, which generally requires a county to lease property pursuant to competitive procedures, does not apply here.

Whether the consideration a public entity receives for use of its property is "adequate" is a determination for the entity's governmental body to make in the first instance and is a determination to which a court will defer. In *City of Fort Worth v. Groves*, for example, the court expressly deferred to the commissioners court's factual determination that leasing the county convention center to the City of Fort Worth under the statutory predecessor to section 319.004 of the Local Government Code for $1.00 per year and the city's agreement to operate and maintain the convention center for the benefit of the public provided adequate consideration. *See City of Fort Worth v. Groves*, 746 S.W.2d 907, 916-17 (Tex. App.–Forth Worth 1988, no writ); *see also id.* at 916 ("In the absence of a showing of fraud or bad faith, it is not for the courts to declare a document conforming to the language of a lease having terms reasonable to a lease, to be something else."). Here, while the Museum does not pay the County monetary consideration to use the leased property, the Museum does operate the County's property as a museum and pay for the upkeep of the interior of the buildings. The commissioners court that entered into the 1989 lease agreement could have reasonably determined that the lease agreement required the Museum to provide adequate consideration for use of the County's property. *See id.* at 916.

Finally, we address whether the lease agreement creates a county debt in violation of article XI, section 7 of the Texas Constitution. Under article XI, section 7, a county may not incur debt for any purpose "in any manner" unless the county simultaneously creates the debt and provides for levying and collecting "a sufficient tax to pay the interest thereon and provide at least two per cent . . . as a sinking fund." TEX. CONST. art. XI, § 7. Article XI, section 5 contains a similar limitation that applies only to cities. *See id.* art. XI, § 5 (prohibiting municipality from creating "debt"). For purposes of these constitutional provisions, "debt" is "any pecuniary obligation imposed by contract, except such as will, at the date of the contract, within the lawful and reasonable contemplation of the parties, be satisfied out of current revenues for the year, or out of some fund then within the immediate control of the city [or county]." *City of Bonham v. S.W. Sanitation, Inc.*, 871 S.W.2d 765, 768 (Tex. App.–Texarkana 1994, writ denied). A contract that runs for more than a year but that gives the city or county a right to terminate it at the end of each year is a commitment of current revenues only and is not a debt. *See id.*

We conclude that the lease agreement violates article XI, section 7 to the extent it obligates the County to pay for the Museum's utilities and other expenses and to insure and maintain the buildings and grounds over a multi-year period. The commissioners court that entered into the lease agreement could not have contemplated that the County could satisfy its unspecified, multi-year obligation out of county revenues on hand in 1989. We gather that the County did not provide for levying and collecting taxes to pay the interest and to create a sinking fund.[3] Furthermore, the lease

---

[3]Article XI, section 7 imposes conditions on the creation of debt; it does not authorize creation of debt. *See* Tex. Att'y Gen. Op. Nos. JC-0139 (1999) at 2; DM-467 (1998) at 7 n.18 ("Article XI, section 7 [of the Texas Constitution] limits the authority of a county to incur debt; it does not affirmatively authorize counties to levy taxes for any purpose. . . . Therefore, before providing for a levy and sinking fund in order to comply with article XI, section 7, a county should first verify that it is authorized to levy the tax.") (citing *Mitchell County v. City Nat'l Bank*, 43 S.W. 880, 883 (Tex. 1898) (Texas Constitution article XI, section 7 "contains no grant of authority to levy a tax")). It does not appear that a county would be authorized to levy a tax to support its obligations under a lease entered into pursuant to chapter 319

(continued...)

agreement does not give the county a right to terminate at the end of each year or to elect on a yearly basis whether or not to appropriate funds to satisfy its obligations under the lease.

The Museum asserts that the County's obligations under the lease do not create a debt within the meaning of article XI, section 7 because the County owns the premises and is obligated to operate and maintain its property separate and apart from the lease agreement and because the lease agreement does not provide for fixed or regular payments. We disagree.

First, the Museum asserts that the County's obligation to maintain the Museum buildings and grounds and to pay for its utilities and property insurance is no different than the County's obligation to maintain and provide utilities for other county-owned facilities such as the county courthouse or the county library.[4] The crucial difference, however, is that the County has not contractually obligated itself to another entity to maintain those county buildings or to provide utilities or property insurance for them. The lease agreement transforms the County's general discretionary duty to maintain its property as it sees fit into a "pecuniary obligation imposed by contract." *City of Bonham*, 871 S.W.2d at 768. In addition, a contract need not provide for fixed or regular payments in order to create debt for purposes of article XI, section 7. *See, e.g., Brown v. Jefferson County*, 406 S.W.2d 185, 188 (Tex. 1966) ("an indemnity agreement is a 'debt' within the constitutional sense, and . . . , as a corollary thereto, provision must be made for the payment of any interest that may accrue thereon and for the retirement of the obligation"); Tex. Atty. Gen. Op. No. DM-467 (1998) at 5 ("a county's agreement to indemnify a third party for damages arising from acts of the third party creates a debt within the meaning of article XI, section 7"). Indeed, both a court and this office have specifically concluded that a contract that obligates a city or county to expend unfixed sums to maintain property or operate facilities creates debt in the constitutional sense. *See, e.g., City of Wichita Falls v. Kemp Pub. Library Bd. of Trs.*, 593 S.W.2d 834, 837 (Tex. Civ. App.–Forth Worth 1980, writ ref'd n.r.e.) (obligation that city undertook to run library when it accepted the building from a private party created a debt within the meaning of article XI, section 5); Tex. Att'y Gen. Op. No. WW-1049 (1961) at 2-3 (county agreement with the United States Soil Conservation Service and a soil conservation district to budget annually sufficient funds to maintain flood control projects would create a debt within the meaning of article XI, section 7).

In support of its position that these lease terms do not violate article XI, section 7, the Museum also contends that the County is obligated to maintain the Turner mansion and grounds by the warranty deed pursuant to which the Museum conveyed the premises to the County in 1968. In

---

[3](...continued)
of the Local Government Code. *See* TEX. LOC. GOV'T CODE ANN. § 319.005 (Vernon 1999 & Supp. 2002) (use of net revenue from use of building or improvement authorized by chapter 319); TEX. GOV'T CODE ANN. §§ 1473.021-.024 (Vernon 2000) (county authority to purchase or construct building to be used for coliseum, auditorium, or annual exhibit of livestock or agricultural, horticultural, or mineral products of the county; to issue bonds to finance such purchase or construction; and to impose a tax to pay the bonds).

[4]*See* Supplemental Brief, Museum of the Southwest, from Leonard B. Smith, Attorney at Law, to Susan Denmon Gusky, Chair, Opinion Committee, Office of the Attorney General (Nov. 4, 2002) (on file with Opinion Committee) [hereinafter Museum Supplemental Brief].

July 1968, the co-executors of the estates of Fred and Juliette Turner conveyed the Turner mansion and grounds to the Museum, which agreed "to maintain and care for said premises consistent with their present dignity and appearance, normal wear and tear excepted." Warranty Deed dated July 9, 1968, *supra* note 1, at 2. The next day, the Museum conveyed the Turner mansion and grounds to the County, "subject to all the terms, provisions, covenants and conditions set forth" in the first warranty deed. Warranty Deed dated July 10, 1968, *supra* note 1, at 1. We have not been asked by the County to address the constitutionality of the warranty deed. We do note, however, that the duty to maintain the premises under the warranty deed is much more limited than the obligations the County has undertaken under the lease. Thus, assuming that the County did agree pursuant to the warranty deed "to maintain and care for said premises consistent with their present dignity and appearance, normal wear and tear excepted" and that that agreement is constitutional, the terms of the warranty deed would not support the more expansive obligations the County has undertaken under the lease. Furthermore, the case cited by the Museum, *Harris County v. Jones*, 219 S.W.2d 737 (Tex. Civ. App.–Galveston 1949, writ ref'd n.r.e.), upheld a county's agreement in a deed conveying 100 acres to the county to reconvey 10 acres to the grantors at a certain price, and concluded that such a reconveyance was not subject to a statute requiring counties to sell real property at public auction. That case does not address the interplay of a county's agreement in a deed to maintain property and article XI, section 7.

Although we conclude that the terms of the lease agreement that obligate the County to pay for maintenance of buildings and grounds and other museum expenses over a fifty-year term violate article XI, section 7 and are not enforceable, this does not necessarily mean that the remainder of the lease agreement is without effect. As a general rule, where part of the consideration for an agreement is illegal, the entire agreement is void if the contract is entire and indivisible. *See Montgomery v. Browder*, 930 S.W.2d 772, 778 (Tex. App.–Amarillo 1996, writ denied). The doctrine of severability is an exception that applies in circumstances in which the original consideration for the contract is legal, but incidental promises within the contract are found to be illegal. *See id.* In such a case, the court may sever the invalid provision and uphold the valid portion, provided the invalid provision does not constitute the main or essential purpose of the agreement. *See Williams v. Williams*, 569 S.W.2d 867, 871 (Tex. 1978); *Rogers v. Wolfson*, 763 S.W.2d 922, 925 (Tex. App.–Dallas 1989, writ denied). We have found no authority suggesting that the doctrine of severability may not be applied when a contract term is invalid under article XI, section 7. A 1982 opinion of this office applies the doctrine to a contract term creating a debt in violation of article III, section 49, which prohibits the state from creating a debt. *See* Tex. Att'y Gen. Op. No. MW-475 (1982) at 4 ("an invalid indemnity clause in an otherwise enforceable contract will not ordinarily invalidate the remainder of the contract") (citing *Williams v. Williams*, 569 S.W.2d 867 (Tex. 1978)).

We believe that the unconstitutional terms are severable from the lease agreement and that the remainder of the lease agreement is effective. Here, the essential consideration or purpose of the lease agreement is the County's agreement to lease the Turner estate to the Museum to use it as a museum and the Museum's agreement to operate the estate for that purpose. As we have concluded, the County's agreement to lease its property to the Museum for this purpose is legal. *See* discussion, *supra* pp. 3-5. In our view, the County's agreement to pay certain limited expenses associated with

the Museum is merely a promise incidental to the lease agreement's essential purpose. Furthermore, the lease agreement expressly provides that "[i]f any clause or provision hereof is invalid, unenforceable or illegal under present or future laws effective during the life of this lease, it is the intention of the parties that the remainder of this agreement shall not be affected thereby but shall continue in full force." Amended and Restated Lease Agreement, *supra* note 1, ¶ 16.

The Museum has submitted a supplemental brief that takes the view that the essential feature of the lease agreement is the Museum's promise to manage, conduct, and maintain a public museum and that the County's financial obligations are merely incidental to the lease agreement. *See* Museum Supplemental Brief, *supra* note 4, at 2. On the other hand, the County asserts in its supplemental brief that "the financial provisions are a large part of the consideration provided by Midland County. They are directly tied to the remainder of the consideration supplied by Midland County, which is allowing the Museum to use the building. The two provisions are inseparable. The financial provisions are not incidental promises, but a material part of the lease."[5] We find the County's position unpersuasive. Under the lease agreement, the Museum has received from the County the right to use the Turner estate for only $1, with no annual lease payments, for fifty years. The County's financial obligations under the lease are minimal when compared to this primary consideration provided by the County.

For these reasons, we conclude that the lease terms that obligate the County to pay for the Museum's utilities and other expenses and to insure and maintain the buildings and grounds are severable from the lease agreement's other terms and that the lease agreement is not void. The Museum is still entitled to lease the Turner estate and to operate it as a museum. This office is not a court, however. We cannot definitively resolve the legal relationship between the parties if the County continues to insist that the unconstitutional terms of the lease agreement are not severable or if the parties are otherwise unwilling to accept our legal analysis.

---

[5]Supplemental Brief, Midland County, from Honorable Russell W. Malm, Midland County Attorney, to Susan Denmon Gusky, Chair, Opinion Committee, Office of the Attorney General (Nov. 4, 2002) (on file with Opinion Committee).

## S U M M A R Y

Midland County had statutory authority to acquire property for the purposes of operating a museum and was authorized to enter into a lease agreement with the Museum of the Southwest. The commissioners court that entered into the lease agreement could have reasonably determined that the County and Museum's respective obligations under the lease agreement comported with article III, section 52 of the Texas Constitution. To the extent terms of the lease agreement obligate the County to pay for the Museum's utilities and other expenses and to insure and maintain the building and grounds over a multi-year period and do not give the County a right to terminate at the end of each year or to elect on a yearly basis whether or not to appropriate funds to satisfy its obligations under the lease, those terms violate the restrictions on public debt in article XI, section 7 of the Texas Constitution. Because those terms are severable from the lease agreement's other terms, however, the remainder of the agreement is not void. The Museum is still entitled to lease the Turner estate and to operate the estate as a museum.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN DENMON GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee